610 A.2d 420

IN THE MATTER OF THE ISSUANCE OF HAZARDOUS WASTE FACILITY PERMIT NO. 0901D21HP01 BY THE DEPARTMENT OF ENVIRONMENTAL PROTECTION TO ICI AMERICAS, INC.

Superior Court of New Jersey
Appellate Division

Argued May 5, 1992—Decided July 20, 1992.

Before Judges Shebell, Skillman and D'Annunzio.

*Edward Lloyd* argued the cause for appellants Bayonne Citizens for Clean Air, Staten Island Citizens for Clean Air, Marc Liebeskind and Barbara Chinitz (Rutgers Environmental

Law Clinic, attorneys; *Edward Lloyd* and *Margaret M. Hayden,* on the brief).

*William H. Hyatt, Jr.* argued the cause for respondent ICI Americas, Inc. (*Pitney, Hardin, Kipp & Szuch,* attorneys; *William H. Hyatt,* on the brief).

*Gene B. Rosenblum,* Deputy Attorney General, argued the cause for respondent Department of Environmental Protection (*Robert J. Del Tufo,* Attorney General, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel; *Gene B. Rosenblum,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The issue presented by this appeal is whether under the Solid Waste Management Act (SWMA), *N.J.S.A.* 13:1E-1 to -48, and regulations adopted thereunder, the operator of a hazardous waste facility may construct a new incinerator without submitting an Environmental Impact Statement (EIS) to the Department of Environmental Protection (DEP).

ICI Americas, Inc. (ICI) has operated a factory in Bayonne since 1965 which produces a Teflon-like plastic sold under the trade name "Fluon." For a substantial period of time, ICI has stored the waste generated by this production process in a 55,000 gallon storage container and disposed of it by means of a hazardous waste incinerator. Since ICI constructed its storage container and incinerator prior to the enactment of the SWMA, it was not required at that time to obtain a waste facility permit from the DEP.[1] However, after the enactment of the SWMA, the Federal Resource Conservation and Recovery Act (RCRA),

---

[1]Pursuant to an executive reorganization plan, the Department of Environmental Protection recently has been redesignated as the Department of Environmental Protection and Energy. Reorg. Plan No. 002–1991, *reprinted in N.J.S.A.* 13:1D–1, at 208. However, since that name change did not occur until after the administrative actions relevant to this appeal, the agency is referred to in this opinion as the Department of Environmental Protection.

§ 42 *U.S.C.A.* § 6901 to § 6992k, and administrative regulations implementing these legislative enactments, ICI was required to obtain such a permit. Consequently, on March 21, 1984, the DEP directed ICI to submit a complete New Jersey Hazardous Waste Facility Permit Application for its storage container and incinerator. ICI submitted this application on September 21, 1984, but did not furnish other necessary documents until September 15, 1987.

On September 29, 1988, ICI submitted a second application seeking authorization to construct a new and substantially larger incinerator. ICI indicated that a new incinerator was needed because it was expanding its production facilities, which would result in increased waste generation and thus a need for increased incinerator capacity. However, ICI did not submit an EIS with this application and a member of the public raised a question regarding this omission during the comment period. In response, the DEP stated that ICI was not required to submit an EIS under the applicable administrative regulations, because "the facility in question is not a new facility ... [and] ... the facility is not applying for a modification or revocation and reissuance of a permit."

On November 8, 1989, ICI withdrew its initial permit application for the existing incinerator but continued its second application for the new incinerator. On March 15, 1990, the DEP issued a final hazardous waste facility permit to ICI, which granted ICI's second application to construct and operate the new incinerator.

Appellants filed a notice of appeal from DEP's decision to issue a hazardous waste facility permit to ICI without requiring an EIS. We reverse.

■ The SWMA requires any party who proposes to construct, acquire or operate a solid waste management facility to prepare an EIS. *N.J.S.A.* 13:1E–26 provides in relevant part:

> *Prior to the construction,* acquisition, or operation *of any solid waste facility,* ... *the person proposing the construction,* acquisition, or operation,

*in addition to preparing an environmental impact statement for the solid waste facility* in such form as shall be required by the commissioner pursuant to [*N.J.S.A.* 13:1E–6] shall make or cause to be made any preliminary surveys, investigations, studies, borings, maps, plans, drawings, and estimates of costs and of revenues as the commissioner may deem necessary relating to the type of such solid waste facility.

*The results of the environmental impact statements,* surveys, investigations, studies, borings, maps, plans, drawings, and estimates required by the commissioner *shall be submitted to the commissioner for approval.* [Emphasis added].

The definition of "solid waste facilities" in *N.J.S.A.* 13:1E–3(h) includes an "incinerator." Therefore, the SWMA envisions that an EIS will be prepared before an incinerator is constructed.

In addition, *N.J.S.A.* 13:1E–6a(2) provides in relevant part that the DEP shall

[f]ormulate and promulgate, amend and repeal codes, rules and regulations concerning solid waste collection and solid waste disposal activities. *Such codes, rules and regulations shall establish the procedures relating to the preparation and submission of environmental impact statements prior to the construction, acquisition, or operation of any solid waste facility....* [Emphasis added].

The DEP has discharged this statutory responsibility by adopting regulations which set forth the required contents of an EIS in considerable detail. *N.J.A.C.* 7:26–1.4; *N.J.A.C.* 7:26–2.9(c); *N.J.A.C.* 7:26–12.2(j)(4).[2] An EIS must contain a "realistic" assessment of the probable impact of the proposed facility "upon the geology, soils, hydrology, air quality, ecology, land use, socioeconomics, aesthetics, history and archeology" of the surrounding area. *N.J.A.C.* 7:26–1.4. In addition, the statement must contain a "listing of adverse environmental impacts which cannot be avoided" and a "description of the steps to be taken to minimize" further degradation. *Ibid.*

The regulation which is the focus of this appeal is *N.J.A.C.* 7:26–12.2(j), which provides in relevant part:

---

[2]Although the DEP regulations refer to these statements as Environmental and Health Impact Statements, we refer to them throughout this opinion as Environmental Impact Statements, which is the term used in the SWMA.

Certain applicants will be required to submit an Environmental and Health Impact Statement (EHIS) in addition to Parts A and B of the permit application in accordance with the provisions set out below:

1. Applicants seeking the initial permit issued pursuant to this subchapter for a new facility unless: [exceptions not applicable here]

Another regulation excludes operators of "existing hazardous waste facilities" from the requirement to submit an EIS. *N.J.A.C.* 7:26–12.1(a)1.

*N.J.S.A.* 13:1E–26 and *N.J.S.A.* 13:1E–6(a)(2) do not provide express authorization to the DEP to exempt any party who proposes to construct, acquire or operate a solid waste management facility from the obligation to prepare an EIS. However, *N.J.S.A.* 13:1E–4(a) authorizes the DEP to create exemptions from the registration requirements of the SWMA:

*The department* shall have power to supervise solid waste collection and disposal facilities or operations, and shall in the exercise of such supervision require the registration of new and existing solid waste collection and disposal facilities and operations; and *may exempt from the requirement of registration any class of solid waste collection or disposal facility or operation.* [Emphasis added].

Since *N.J.S.A.* 13:1E–26 provides that the result of an EIS, together with surveys, investigations, borings, maps, plans, drawings and estimates, shall be submitted to the Commissioner of DEP for approval, it appears that the essential purpose of an EIS is to assist the DEP in determining whether to approve a solid waste facility. Consequently, it seems reasonable to conclude that the authority of DEP under *N.J.S.A.* 13:1E–4(a) to establish exemptions from registration extends to exemptions from the obligation to file an EIS.

However, this authority must be reasonably exercised in a manner consistent with the underlying objectives of the SWMA. In *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 558–59, 362 *A.*2d 13 (1976), the Court took note of "the general principle that exceptions in a legislative enactment are to be strictly but reasonably construed, consistent with the manifest reason and purpose of the law." When the Legislature delegates authority to an administrative agency to establish exceptions from general statutory requirements, it should exercise

that authority in a similar manner. Thus, the DEP must strictly construe its own regulations establishing exemptions from the regulatory requirements of the SWMA in furtherance of the underlying objectives of this legislation. *Cf. Medford Convalescent & Nursing Ctr. v. Division of Medical Assistance & Health Servs.*, 218 *N.J.Super.* 1, 5, 526 *A.*2d 1087 (App.Div.1985) ("Regulations are subject to the same rules of construction as a statute.").

The objective of *N.J.S.A.* 13:1E-4(a) is "to authorize exemptions only with respect to technologies that either impose minimal environmental and public health risks or those that are pervasively regulated by other federal or state statutes." *Terminal Constr. Corp. v. Hoboken–Union City Weehawken Sewerage Auth.*, 244 *N.J.Super.* 537, 544, 582 *A.*2d 1288 (App. Div.1990), *certif. denied*, 126 *N.J.* 323, 598 *A.*2d 883 (1991). The DEP's interpretation of its own regulations to allow ICI to construct a new hazardous waste incinerator without filing an EIS is inconsistent with this interpretation of *N.J.S.A.* 13:1E-4a. Preliminarily, we note that ICI has never obtained a permit from the DEP for any part of its hazardous waste facility and consequently has never submitted an EIS. Moreover, the new incinerator constitutes a substantial expansion of the hazardous waste activity previously conducted on the site; while the old incinerator could burn 60 pounds of waste per hour, the new incinerator has an authorized capacity of 160 pounds per hour, thus resulting in a 167% increase in incineration capacity. ICI does not suggest that the technology incorporated in this incinerator imposes "minimal environmental and public health risks." There also is no indication that ICI's facility is "pervasively regulated" under other federal or state statutes. To the contrary, the SWMA is the primary mechanism under which New Jersey regulates hazardous waste facilities, and the Environmental Protection Agency has delegated a substantial part of the federal regulation of such facilities to the State pursuant to 42 *U.S.C.A.* § 6926. See 50 *Fed.Reg.* 5260 (1985).

The salutary purposes served by an EIS is another reason for narrowly construing DEP's authority to exempt hazardous waste facilities from this requirement. An EIS forces both the permit applicant and the DEP to consider the impact of the proposed activity on all aspects of the "environment"—ecological, socioeconomic, geologic and aesthetic. No other disclosure required by the SWMA involves such a broad-ranging inquiry. *Compare N.J.A.C.* 7:26–12.2(j)(4) (prescribing contents of an EIS) *with N.J.A.C.* 7:26–12.2(e) and (f) (prescribing contents of parts A and B of a permit application).

The submission of an EIS also allows local public officials and community residents to participate in the permitting process in a more meaningful way. Any tentative approval of a solid waste disposal facility must be transmitted to the governing body of the affected municipality, "accompanied by a fact sheet setting forth the principal facts and the significant factual, legal, methodological and policy questions considered in granting the tentative approval." *N.J.S.A.* 13:1E–5.1c. In cases where an applicant is required to submit an EIS, the fact sheet must also contain "a brief summary as to how the [EIS] demonstrates that the proposed facility, subject to such conditions made part of the draft permit, would not create a significant adverse impact upon the public health or environment." *N.J.A.C.* 7:26–12.11(c)4. Thereafter, the DEP is required to conduct a "full and impartial hearing" regarding the proposed facility and operation. *N.J.S.A.* 13:1E–5.1d. The "obvious purpose" of these provisions is "to give interested persons sufficient information to enable them to review and evaluate the proposal and provide the DEP with their views." *In re NJPDES Permit No. NJ 0055247*, 216 *N.J.Super.* 1, 18, 522 *A.*2d 1022 (App.Div.), *certif. denied*, 108 *N.J.* 185, 527 *A.*2d 1390 (1987). Therefore, to the extent that a "fact sheet" omits information concerning the environmental impact of a proposed facility, local officials and residents will be less well equipped to intelligently participate in the permit approval process, contrary to the intent of *N.J.S.A.* 13:1E–5.1.

Consequently, if *N.J.A.C.* 7:26–12.2(j) clearly exempted ICI's new incinerator from the requirement to submit an EIS, we would conclude that the regulation exceeded the DEP's authority under *N.J.S.A.* 13:1E–4a. However, we believe that *N.J.A.C.* 7:26–12.2(j)(1) may be reasonably construed to apply to ICI's new incinerator.

*N.J.A.C.* 7:26–12.2(j)(1) requires an EIS to be submitted by an applicant who seeks "the initial permit issued pursuant to this subchapter for a new facility." ICI had not previously been issued a permit under the SWMA and thus the solid waste facility permit issued by DEP on March 15, 1990 was an "initial permit." The only question is whether that permit was issued for a "new facility."

The SWMA defines "solid waste facilities" to include "incinerators," *N.J.S.A.* 13:1E–3(h), and ICI's application to DEP was for permission to construct a new incinerator. Nevertheless, the DEP concluded that ICI's new incinerator was not a "new facility" but rather a new component part of an "existing facility." See *N.J.A.C.* 7:26–12.1(a)(1). Consequently, the DEP took the position that ICI was not required to submit an EIS.

However, while the term "facility" may refer in some contexts to an entire solid waste management complex, see *N.J.A.C.* 7:26–1.4, it also may be construed to refer to an individual unit, such as an incinerator, in order to effectuate the underlying intent of a legislative enactment. *See Mobil Oil Corp. v. EPA*, 871 F.2d 149, 153 (D.C.Cir.1989) ("If the expert agency believes that the legislative purposes will best be satisfied by construing [facility] to mean different things in different contexts, then it may act upon that premise."). Here, it is clear that ICI's construction of a new incinerator with a capacity to treat more than twice as much hazardous waste is a significant enough change to require a complete reevaluation of the impact of that facility upon the environment. Indeed, if DEP's construction of *N.J.A.C.* 7:26–12.2(j)(1) were correct, ICI could have replaced its present incinerator with one a hundred

times larger and still not be required to prepare an EIS. Therefore, we conclude that the construction of a new incinerator changed the existing complex into a "new facility" requiring the submission of an EIS.[3]

This interpretation of *N.J.A.C.* 7:26–12.2(j)(1) is reinforced by the regulations governing the submission of an EIS for non-hazardous waste facilities. In 1986, as part of an effort to bring the permit procedures governing non-hazardous waste facilities into conformity with those governing hazardous waste facilities, the DEP proposed substantial amendments to its regulations including provisions requiring an EIS to be submitted in connection with permit applications for non-hazardous solid waste facilities. 18 *N.J.R.* 883–924 (May 5, 1986). The proposed *N.J.A.C.* 7:26–2.4(c) stated that every application for a new permit shall include an EIS, and the proposed *N.J.A.C.* 7:26–2.7(a)(2) stated that "[a]ny expansion, extension, enlargement or other increase beyond permitted capacity conditions shall be considered a new facility and shall require the application for the Departmental approval of a new permit." In response to objections to these proposed regulations, the DEP stated: .

> The Department's review of the facility's environmental and health impact statement is based largely on the capacity of the facility. This capacity translates into environmental impacts generated by the facility which must in turn be evaluated by the Department. To suggest that the facility be permitted at one capacity, and that capacity being the limits on which the environmental impacts were evaluated and determined to be acceptable, and then allow expansion without a subsequent reevaluation by the Department and its associated public review, would be in direct contravention of the intent and purposes of the rules and legislative mandate of the Solid Waste Management Act. [19 *N.J.R.* 930 (June 1, 1987)]

Consequently, the DEP adopted *N.J.A.C.* 7:26–2.4(c) and *N.J.A.C.* 7:26–2.7(a)(2) as proposed. Since the DEP's regulations governing non-hazardous waste facilities treat any expan-

---

[3]In view of this conclusion, we have no occasion to consider appellants' alternative argument that ICI was required to submit an EIS pursuant to *N.J.A.C.* 7:26–12.2(j)(2).

sion in capacity as a "new facility," it would be highly anomalous and in our view impermissible for the DEP to interpret this term more restrictively in connection with its regulation of hazardous waste.

█ Finally, we reject ICI's argument that it was not required to submit an EIS because the purposes of an EIS are fulfilled by the RCRA permitting process administered by the DEP. Although the RCRA requires the regulations of any state which chooses to administer the RCRA hazardous program to be equivalent to the federal RCRA regulations, 42 *U.S.C.A.* § 6926(b), it also authorizes a state to adopt regulations which are more stringent than the requirements of RCRA and the regulations adopted thereunder. 42 *U.S.C.A.* § 6929. Thus, even if an EIS is not required under RCRA, the DEP may require ICI to submit an EIS pursuant to state law.

Accordingly, we reverse the decision of the DEP granting ICI a hazardous waste facility permit and remand the matter to DEP to require an EIS to be submitted and to reconsider ICI's permit application in the light thereof.