646 A.2d 463

IN THE MATTER OF CERTAIN AMENDMENTS TO THE ADOPTED AND APPROVED SOLID WASTE MANAGEMENT PLAN OF THE HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION SOLID WASTE MANAGEMENT DISTRICT.

HUDSON MEADOWS URBAN RENEWAL DEVELOPMENT CORPORATION AND TOWN OF KEARNY, PLAINTIFFS–APPELLANTS, v. HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 7, 1994—Decided July 18, 1994.

Before Judges MICHELS, SKILLMAN and WEFING.

*Gary Bennett* argued the cause for appellant Town of Kearny and *Stacy S. Weinstein* argued the cause for appellant Hudson Meadows Urban Renewal Development Corp. (*Picco, Mack, Herbert, Kennedy, Jaffe & Yoskin* and *Koch, Koch & Bennett,* attorneys for appellants (*Steven J. Picco* and *Mr. Bennett,* of counsel; *Maeve E. Cannon* and *Ms. Weinstein,* on the brief).

*George N. Cohen,* Deputy Attorney General, argued the cause for respondents Hackensack Meadowlands Development Commission and Department of Environmental Protection and Energy (*Deborah T. Poritz,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Mr. Cohen,* on the brief).

*Porro and Porro* submitted a brief on behalf of *amicus curiae* Hackensack Meadowlands Municipal Committee (*Alfred A. Porro, Jr.,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The Hudson Meadows Urban Renewal Development Corporation (Hudson Meadows) and the Town of Kearny (Kearny) appeal

from a resolution of the Hackensack Meadowlands Development Commission (HMDC) approving an amendment to the solid waste management plan for the Hackensack Meadowlands District (the District), which designates the site of the former Keegan Landfill as the site for a new regional solid waste facility for non-processible waste, and from a final decision of the Department of Environmental Protection and Energy (DEPE) approving this amendment. We reject appellants' various challenges to this solid waste management plan amendment and affirm its validity.

The Solid Waste Management Act (SWMA), *N.J.S.A.* 13:1E-1 to -48, establishes a comprehensive system for the regulation of solid waste collection, reprocessing and disposal. It authorizes each county and the HMDC "to develop and implement a comprehensive solid waste management plan which meets the needs of every municipality within each such county and within the [District]." *N.J.S.A.* 13:1E-2(b)(2). In addition, the SWMA authorizes the DEPE "to develop through a Statewide solid waste management plan objectives, criteria and procedures to assure the orderly preparation and evaluation of the solid waste management plans." *N.J.S.A.* 13:1E-2(b)(6). A solid waste management plan must include, among other things, "[a] site plan, which shall include ... sufficient additional available suitable sites to provide solid waste facilities to treat and dispose of the actual and projected amounts of solid waste contained in the report accompanying the plan." *N.J.S.A.* 13:1E-21(b)(3). Solid waste management districts are also authorized to enter into agreements to provide for the disposal of waste originating in other districts. *Ibid.* If districts are unable to reach agreement regarding the disposal of waste originating in other districts, the Commissioner of the DEPE, in conjunction with the Board of Public Utilities, may order the districts to amend their plans to provide for the inter-district flow of waste. See *A.A. Mastrangelo, Inc. v. Commissioner, Dep't of Envtl. Protection*, 90 *N.J.* 666, 449 *A.*2d 516 (1982). A solid waste management plan must also include "methods of financing solid waste management." *N.J.S.A.* 13:1E-21(b)(6). The SWMA sets forth detailed procedures which govern a dis-

trict's adoption and the Commissioner of DEPE's review of a solid waste management plan. *N.J.S.A.* 13:1E–23, 24. These procedures also apply if a district proposes to amend its plan. *In re Amendments to Solid Waste Management Plan of Hudson County Solid Waste Management Dist.*, 133 *N.J.* 206, 212, 627 *A.*2d 614 (1993).

A solid waste management plan's designation of a site for a solid waste facility does not provide authorization for the operation of that facility. Before a facility may be actually constructed, acquired or operated, the entity proposing the facility must obtain the approval of the Commissioner of the DEPE pursuant to *N.J.S.A.* 13:1E–26, as well as such other regulatory approvals as may be required based on the nature of the site and the proposed facility.

On December 6, 1991, the HMDC announced proposed amendments to its solid waste management plan, including the designation of a site in the Town of Kearny for the "HMDC Regional Solid Waste Materials Handling Complex," which would contain "a non-processible sanitary landfill, a construction/demolition recycling facility, and other possible accessory uses." The proposed designation of this site resulted from a joint study by the HMDC, the DEPE, the Board of Public Utilities, and Bergen, Essex and Hudson counties. The site, now owned by appellants, is comprised of the former "Keegan Landfill," and adjacent wetlands known as the "Kearny Freshwater Marsh." The proposed new solid waste facility will be located on top of the existing landfilled portions of the site, after environmental problems associated with the site's prior use have been remediated.

The HMDC received written comments regarding the proposed amendment to its solid waste management plan and conducted three days of hearings at which various members of the public, including appellants, presented comments. After completion of the hearings, the hearing officer submitted a detailed report which discussed the HMDC's proposal and the comments received from members of the public. This report stated in part:

It is believed that landfill operations began on the site in the 1940's or earlier. Operations continued until 1972....

Since the landfill was closed prior to the [SWMA], there are no environmental improvements at the site. The HMDC has estimated that there are approximately 65 million gallons of leachate being produced on-site each year. This leachate enters either the Kearny Freshwater Marsh, or Frank's Creek which bisects the site and flows south to Newark Bay. Frank's Creek has often been described as an open sewer, that usually has a green color. Leachate seeps are evident along the banks of the creek and the perimeter of the site.

The site has had a series of underground fires over the years that have caused air pollution problems for local residents.... The last fire in November, 1991 required an area the size of a football field to be disturbed, with water being pumped onto the site for over a week. Obviously, where there are underground fires there is methane, and there are no controls to prevent lateral migration of methane into adjacent structures.

The proposed non-processible landfill would be located on top of the existing landfilled portions of the lots noted herein. This site is generally referred to as the old Keegan Landfill.... The goal of the HMDC is to remediate the old landfill thereby containing and controlling the existing pollutants from the site, while siting a much needed non-processible landfill for the region....

Tipping (disposal) fees would pay for site remediation and landfill design, construction, operation, closure, post-closure and end-use plans.

The HMDC reviewed the hearing officer's report as well as the written and oral comments received from members of the public, and on May 27, 1992, it passed a resolution adopting the proposed amendment to its solid waste management plan.

The amendment was submitted to the Commissioner of the DEPE, who certified his approval by a written decision dated December 7, 1992. However, the Commissioner identified a number of "issues of concern" which the HMDC would have to address before the Commissioner would authorize acquisition of the site and construction of the facility. The Commissioner's decision distinguished between the "planning phase" of the proposed solid waste facility, represented by the amendment to the HMDC's solid waste management plan, and the "technical phase," in which the HMDC would be required to make a detailed showing of the economic, technical and environmental feasibility of the project:

In general, from a planning perspective, the proposed site is located in the midst of an industrial area and was used for decades as a landfill. Proper landfill closure and/or remediation was never accomplished and the site may represent an ongoing source of pollution in the area. The HMDC proposal to reactivate the site to

remediate existing pollution problems, and to develop a modern construction and demolition debris processing/recycling/disposal facility under state-of-the-art environmental standards, represents significant positive benefits locally and to the State. At the local level, existing sources of pollution would be remediated. The project will improve, not lessen the environmental condition of the site. From a statewide perspective, a regional facility to process construction and demolition debris would further advance both New Jersey's statewide recycling goals and primary policy objective of achieving disposal self-sufficiency. This is particularly important since no long-term landfills currently exist or are actively being planned in the entire northeastern portion of the state.

This facility can be a cornerstone to solving the State's deficiencies in disposal capacity thereby greatly reducing our dependence on out-of-state landfills. Based on these considerations, the proposed facility has been approved at the planning phase of the project development process....

Notwithstanding this approval, concerns have been expressed by state agencies, as well as local citizens and officials. These concerns must be addressed in great detail during the technical engineering and environmental and health impact phase of the [DEPE's] permitting process. A permit will not be issued for the proposed project in the absence of satisfactory responses to the noted concerns and a demonstration that all remediation/construction/operation aspects of the proposed project meet the [DEPE's] regulatory requirements.

Appellants filed separate notices of appeal from the Commissioner's approval of the HMDC's amendment of its solid waste management plan. In addition, while the plan amendment was still under review by the Commissioner, appellants filed an action in lieu of prerogative writs in the Law Division challenging the HMDC's adoption of the amendment which, after the Commissioner's final decision, was transferred to this court. *R.* 1:13–4. We subsequently consolidated all three appeals.

I

█ Initially, appellants argue that the HMDC did not validly adopt the amendment of its solid waste management plan because the resolution approving the amendment failed to receive the required number of affirmative votes. Appellants rely upon those sections of the Hackensack Meadowlands Reclamation and Development Act, *N.J.S.A.* 13:17–1 to –86, which require any proposed "codes and standards ..., the district master plan and amendments thereto, development and redevelopment plans, and improvement plans" to be reviewed by the Hackensack Meadowlands

Municipal Committee (the Municipal Committee),[1] *N.J.S.A.* 13:17–8(a), and which provide that if the Municipal Committee rejects such a proposal, the HMDC may take final action thereon only "by a vote of 5/7 of the full membership of the [HMDC]." *N.J.S.A.* 13:17–8(c). Since the Municipal Committee rejected the HMDC's proposed plan amendment, and the HMDC's resolution adopting the amendment was passed by a vote of only three of its then five members, appellants contend that the resolution failed to receive the super-majority vote required by *N.J.S.A.* 13:17–8(c).

However, the HMDC's proposed plan amendment was not submitted to the Municipal Committee pursuant to the provisions of the Hackensack Meadowlands Reclamation and Development Act, but was instead submitted pursuant to the SWMA. While the SWMA authorizes county boards of freeholders and the HMDC to adopt solid waste management plans, *N.J.S.A.* 13:1E–23(a), it also provides for the establishment of a Solid Waste Advisory Council (SWAC) in each district, *N.J.S.A.* 13:1E–20(b)(1), and requires the county or the HMDC to consult with its SWAC before adopting a plan. *Ibid.* The Legislature has designated the Municipal Committee as the SWAC for the Hackensack Meadowlands District. *Ibid.*

*N.J.S.A.* 13:1E–20(b)(1) clearly indicates that a SWAC's role in the adoption of a solid waste management plan is solely advisory:

> The respective boards of chosen freeholders and the [HMDC] *shall consult* with the relevant [SWAC] at such stages in the development and formulation of the solid waste management plan as each such board of chosen freeholders or the [HMDC], as the case may be, shall determine; provided, however, that a solid waste management plan shall be adopted as hereinafter provided only *after consultation* with the relevant [SWAC].

[Emphasis added.]

Nothing in the SWMA suggests that broader authority has been delegated to the Municipal Committee than to any other SWAC. Therefore, the HMDC was not required to adopt its plan amend-

---

[1] The Municipal Committee is comprised of the mayor or elected chief executive of each constituent municipality in the District. *N.J.S.A.* 13:17–7(a).

ment by a 5/7ths vote simply because the Municipal Committee, acting in its capacity as a SWAC, disapproved the proposal.

In its *amicus* brief, the Municipal Committee relies upon the part of *N.J.S.A.* 13:1E–20(b)(1) which provides that "nothing herein contained shall be construed as in any way altering the powers, duties and responsibilities of the [Municipal Committee] except as herein specifically provided." However, this language simply preserves the powers conferred upon the Municipal Committee by the Hackensack Meadowlands Reclamation and Development Act. Those powers do not include the review of solid waste management plans, which are authorized and exclusively governed by the SWMA.

The Municipal Committee also argues that the HMDC's plan amendment has the practical effect of rezoning a large parcel of land, and thus requires an amendment to the HMDC's master plan which must be submitted to the Municipal Committee for review under *N.J.S.A.* 13:17–8. However, the HMDC's role under the SWMA is the same as that of any other solid waste management district, all of which are counties, *N.J.S.A.* 13:1E–19, and its land use regulatory powers conferred under the Hackensack Meadowlands Reclamation and Development Act are substantially the same as those generally exercised by municipalities. *Compare N.J.S.A.* 13:17–9 to –22 *with N.J.S.A.* 40:55D–28 to –65. One of the fundamental principles underlying the SWMA is that solid waste management plans adopted by districts and approved by the Commissioner preempt municipal zoning ordinances which prohibit the siting of solid waste facilities or require compliance with local regulations. *Regional Recycling, Inc. v. State, Dep't of Envtl. Protection,* 256 *N.J.Super.* 94, 102, 606 *A.*2d 817 (App.Div. 1991), *aff'd o.b.,* 127 *N.J.* 568, 606 *A.*2d 815 (1992); *Township of Chester v. Department of Envtl. Protection,* 181 *N.J.Super.* 445, 450–53, 438 *A.*2d 334 (App.Div.1981); *Township of Little Falls v. Bardin,* 173 *N.J.Super.* 397, 415–18, 414 *A.*2d 559 (App.Div.1979), *certif. denied,* 82 *N.J.* 286, 412 *A.*2d 792 (1980). Therefore, when the HMDC, acting in its capacity as a solid waste management

district, adopts a solid waste management plan which designates a site for use as a solid waste facility, this action supersedes any conflicting provisions of the master plan and zoning ordinance which the HMDC has previously adopted in its capacity as the land use regulatory authority for the District, and thereby obviates the need for the HMDC to amend those land use regulations.

## II

Appellants argue that because *N.J.S.A.* 13:1E–23(f) authorizes an objector to a solid waste management plan to file an action in lieu of prerogative writs challenging its adoption, the Commissioner of the DEPE must automatically stay his review of a plan or plan amendment until the prerogative writ action is concluded. Thus, appellants contend that because they had filed a prerogative writ action in the Law Division challenging the HMDC's plan amendment, the Commissioner lacked the authority to approve the amendment during the pendency of that action.

The short answer to appellants' argument is that *N.J.S.A.* 13:1E–23(g) requires a solid waste management district to submit its plan to the Commissioner "forthwith" upon its adoption, and *N.J.S.A.* 13:1E–24(b) requires the Commissioner "to approve, modify, or reject" the plan within 150 days after its receipt; and that nothing in the SWMA suggests that these obligations are stayed by the filing of an action in lieu of prerogative writs challenging the adoption of a plan. Moreover, since the SWMA's various deadlines for the preparation and review of solid waste management plans reflect an evident legislative objective to encourage the timely adoption and implementation of such plans, it would be inconsistent with the overall intent of the SWMA for the Commissioner to delay his review of a plan simply because an objector has filed an action in lieu of prerogative writs.

Furthermore, we perceive no danger of inconsistency or duplication of effort in allowing the Commissioner to review the merits of a plan at the same time a court reviews a district's adoption of the plan or plan amendment. In *Township Comm. of South Harrison*

*v. Board of Freeholders of Gloucester County,* 213 *N.J.Super.* 179, 185–86, 516 *A.*2d 1140 (Law Div.1985), *rev'd on other grounds,* 210 *N.J.Super.* 370, 510 *A.*2d 42 (App.Div.1986), the court indicated that a judicial determination of the validity of the adoption of a solid waste management plan under *N.J.S.A.* 13:1E–23(f) and the Commissioner's review of the substantive merits of such a plan under *N.J.S.A.* 13:1E–24 involve different issues:

> [T]he issues [must be divided] into two categories: (a) "governmental issues", the arguments that the proceedings were tainted because of matters outside the record and (b) "environmental issues", these being the issues pertaining to the merits of the site from an environmental and sanitary waste perspective; in short, those which were to be passed upon by the [DEPE] pursuant to the [SWMA]....
>
> ... [T]he only way this procedure makes sense is to recognize the dichotomy between a review of the environmental features and the ability to challenge irregularities in the procedure by way of prerogative writs. This Court has neither the expertise nor the resources to intelligently review the environmental aspects of the [SWMA].... On the other hand, it is equally obvious that the Commissioner has neither the expertise nor the legal power to properly adjudicate the governmental issues such as those raised in this case.

We agree with this analysis. The SWMA contemplates that the Commissioner of the DEPE shall determine whether a solid waste management plan conforms with both the SWMA and other environmental requirements. In *A.A. Mastrangelo, Inc. v. Commissioner, Dep't of Envtl. Protection, supra,* the Court noted that "[c]entral to the Act is the planning role of the DEP[E]," 90 *N.J.* at 672, 449 *A.*2d 516, and that "[i]t is obvious that 'the Legislature intended to vest in the Department great supervisory powers over the critical and urgent need for solid waste disposal.'" *Id.* at 687, 449 *A.*2d 516 (quoting *In re Application Combustion Assocs.,* 169 *N.J.Super.* 305, 316, 404 *A.*2d 1194 (App.Div.1979)). Indeed, if a district fails to adopt a plan within the period prescribed by the SWMA, the Commissioner of the DEPE may adopt a plan himself. *N.J.S.A.* 13:1E–23(i); *see State, Dep't of Envtl. Protection v. Middlesex County Bd. of Freeholders,* 206 *N.J.Super.* 414, 422–23, 502 *A.*2d 1188 (Ch.Div.1985), *aff'd o.b.,* 208 *N.J.Super.* 342, 506 *A.*2d 13 (App.Div.1986). Consequently, the DEPE's preeminent role in the administration of the SWMA precludes an interpretation of *N.J.S.A.* 13:1E–23(f) which would authorize a trial court to

invalidate a solid waste management plan on the ground that it conflicts with the SWMA or other environmental legislation. *See Kohlbrenner Recycling Enters., Inc. v. Burlington County Bd. of Freeholders,* 248 *N.J.Super.* 531, 538, 591 *A.*2d 962 (App.Div.), *certif. denied,* 127 *N.J.* 551, 606 *A.*2d 364 (1991).

Thus, a claim that a district has adopted a plan or plan amendment without complying with the procedural requirements of the SWMA or other applicable statutory provisions may be raised by an action in lieu of prerogative writs filed pursuant to *N.J.S.A.* 13:1E–23(f), but any claim that a plan is inconsistent with the substantive provisions of the SWMA or other environmental legislation lies within the Commissioner's jurisdiction under *N.J.S.A.* 13:1E–24. Consequently, appellants' argument that the HMDC was required to approve its plan amendment by a super-majority vote because it was not approved by the Municipal Committee, discussed in section I of this opinion, and their argument that the HMDC did not permit informed comment regarding the proposed plan amendment, discussed in section III, were properly raised in their prerogative writ action filed under *N.J.S.A.* 13:1E–23(f),[2] but their argument that the HMDC's plan amendment does not reasonably implement the provisions of the SWMA, discussed in section IV of this opinion, could not be raised in their prerogative writ action but instead had to be initially considered by the Commissioner. Therefore, the Commissioner properly reviewed the HMDC's plan amendment even though an action in lieu of prerogative writs challenging the District's adoption of that amendment was then pending.

---

[2] We have no need to decide whether appellants' properly filed their prerogative writ action against the HMDC in the Law Division, see *Town of Secaucus v. Hackensack Meadowlands Dev. Comm'n,* 267 *N.J.Super.* 361, 372 n. 1, 631 *A.*2d 959 (App.Div.1993) (noting the unresolved question whether HMDC is a state administrative agency whose decisions are directly reviewable by this court), because even if the Law Division had jurisdiction over the matter initially, the subsequent appeals from the Commissioner's final decision now makes it appropriate for this court to exercise jurisdiction over the entire controversy. *See Pascucci v. Vagott,* 71 *N.J.* 40, 51–54, 362 *A.*2d 566 (1976).

## III

Appellants argue that the HMDC's resolution proposing the plan amendment was invalid because it was not preceded by the informed public comment contemplated by the SWMA and the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –15. More specifically, appellants contend that the HMDC "failed to make available a complete public record on the proposal," and consequently appellants were "in large part unable to fully evaluate the basis for the [HMDC's] proposal and were, therefore, precluded from providing meaningful comment for the [HMDC's] consideration."

However, we are satisfied that the HMDC provided adequate information to appellants and to other members of the public regarding the plan amendment. The public notice of the amendment contained a brief description of the proposed facility. Thereafter, the HMDC conducted three days of hearings during which it distributed three additional, more detailed, descriptions of its proposal. In response to requests for information pursuant to the Right to Know Law, *N.J.S.A.* 47:1A–1 to –4, the HMDC furnished appellants with various additional materials relevant to the proposed amendment. This information was sufficient for appellants to submit detailed written and oral comments in opposition to the HMDC's proposal, including a consultant's comments. Therefore, we conclude that the HMDC provided interested parties, including appellants, with a reasonable opportunity to submit data, views or argument, and thereby conformed with the requirements of *N.J.S.A.* 13:1E–23(d) and *N.J.S.A.* 52:14B–4(a)(3).[3]

---

[3] We assume for the purpose of this opinion, without deciding the issues, that the HMDC is a "state agency" within the intent of *N.J.S.A.* 52:14B–2(a), and that a solid waste management plan or plan amendment is a "rule" within the intent of *N.J.S.A.* 52:14B–2(e). *Cf. In re Amendments to Solid Waste Management Plan of Hudson County Solid Waste Management Dist., supra,* 133 *N.J.* at 219–20, 627 A.2d 614; *but cf. In re Long–Term Out-of-State Waste Disposal Agreement,* 237 *N.J.Super.* 516, 531, 568 A.2d 547 (App.Div.), *certif. denied,* 121 *N.J.* 647, 583 A.2d 337 (1990).

## IV

■ Finally, appellants argue that the HMDC's adoption of its solid waste management plan amendment and the Commissioner's subsequent approval were arbitrary and capricious. Since a solid waste district's adoption of a plan or plan amendment and the Commissioner's review are governed by the same statutory and regulatory provisions, we consider these arguments together.

■ Preliminarily, we note, as appellants apparently concede, that the adoption of a solid waste management plan or plan amendment constitutes quasi-legislative administrative agency action. *See City of Elizabeth v. State, Dep't of Envtl. Protection*, 198 *N.J.Super.* 41, 48–50, 486 *A.2d* 356 (App.Div.1984); *cf. In re Amendments to Solid Waste Management Plan of Hudson County Solid Waste Management Dist., supra*, 133 *N.J.* at 213–21, 627 *A.2d* 614. Consequently, neither the HMDC nor the DEPE was required to conduct a trial-type hearing regarding the proposed plan amendment, or to make findings of fact and conclusions of law in support of their determinations. *Heir v. Degnan*, 82 *N.J.* 109, 119, 411 *A.2d* 194 (1980); *Consolidation Coal Co. v. Kandle*, 105 *N.J.Super.* 104, 117–19, 251 *A.2d* 295 (App.Div.), *aff'd o.b.*, 54 *N.J.* 11, 252 *A.2d* 403 (1969). Furthermore, the plan amendment is entitled to a strong presumption of validity. *See In re Commissioner of Ins.'s March 24, 1992 Order regarding January 24, 1992 Rate Filing by Market Transition Facility of N.J.*, 132 *N.J.* 209, 221, 624 *A.2d* 565 (1993); *A.A. Mastrangelo, Inc. v. Commissioner, Dep't of Envtl. Protection, supra*, 90 *N.J.* at 687, 449 *A.2d* 516; *City of Newark v. Natural Resource Council, Dep't of Envtl. Protection*, 82 *N.J.* 530, 539–40, 414 *A.2d* 1304, *cert. denied*, 449 *U.S.* 983, 101 *S.Ct.* 400, 66 *L.Ed.2d* 245 (1980).

Appellants argue that the HMDC's plan amendment and the DEPE's approval were arbitrary and capricious because no consideration was given to possible alternative landfill sites within the District. However, the HMDC hearing officer's report explicitly responded to this objection:

The HMDC response is that after evaluating the existing "orphan" landfills in the District, the Keegan site offers the most capacity of any of these "orphan" landfills. This is based on staff knowledge of the District. Further, access to the site is ideal since the Keegan Site is located adjacent to two major State highways, with the proposed access along a major Hudson County route.

. . . .

. . . Other sites under consideration were the Malanka Landfill in Secaucus, the MSLA 1–D Landfill in Kearny, the Erie Landfill in North Arlington, the Avon/Viola Landfill in Lyndhurst, and the old Rutherford Landfill in Rutherford.

Appellants argue that there was no basis for the HMDC's and DEPE's conclusion that there is a need for remediation of the Keegan Landfill. The HMDC's hearing officer's report responded:

[O]ne only has to walk the site to see that there is leachate flowing from the site, that the color of the water in Frank's Creek gets progressively greener as it flows through the site, and that numerous underground fires over the years have scarred site vegetation. Further evidence of site contamination was found by the USEPA in their investigation of the site.

. . . .

A September 29, 1989 report prepared by the NUS Corporation/Superfund Division for the United States Environmental Protection Agency indicated the presence of mercury, lead, chromium, polychlorinated biphenols (PCBs) and several semivolatile compounds in various sediment samples. Several inorganic compounds, including mercury, lead, and chromium were detected in surface water samples collected in Frank's Creek.

. . . .

The summary report concluded that the site poses a potential threat of contamination to surface waters. Downstream water samples indicated concentrations of chromium significantly greater than upstream samples. The same could be said for the sediment samples. . . . Further, there is significant evidence of routine dumping throughout the site.

The report went on to say that " . . . based on recreational targets from the Hackensack River and the potential for direct contact, the site is recommended for a MEDIUM PRIORITY for further action. A fence should be installed around the site to limit access to the landfill.

██ Appellants argue that the HMDC and DEPE failed to consider alternatives for funding the remediation of the Keegan Landfill other than reopening the facility. Appellants suggest that claims against responsible parties could raise adequate remedial funds. However, it is unlikely that expensive, time-consuming litigation could raise the thirty million dollars estimated as being

necessary to finance the closure of this site, not to mention estimated post-closure costs of an equal amount. Appellants have also failed to show that the site could be properly remediated through financing predicated on Hudson Meadows' proposed commercial development of the site. Hudson Meadows estimated that its development project would generate approximately five million dollars in revenue per year, not including the site's inevitable post-closure costs, while the HMDC estimated that its non-processible solid waste facility would generate approximately two million dollars per year, after absorption of the closure and post-closure costs for both the Keegan Landfill and another adjoining landfill. Thus, the HMDC's proposal appears to be the more financially beneficial of the two. In any event, the HMDC is not required to choose the best of all available means to finance the closure of a landfill, so long as the means it has selected are reasonable.

Appellants argue that the HMDC and the DEPE failed to give consideration to the impact of the proposed re-opening of the Keegan Landfill upon adjacent properties within Kearny. However, the HMDC hearing officer's report stated:

> The HMDC has estimated that site operations would generate 200 trucks per day, the majority of which occurs at off-peak hours.... [T]he proposed facility would not change the Level of Service of the feeder routes (Harrison Avenue or Belleville Turnpike). In addition, the site is located about one-half mile west of the intersection of Route 280 and the New Jersey Turnpike at the 15W Interchange. It is anticipated that trucks will utilize the major arteries, i.e. Harrison Avenue and Belleville Turnpike to access the site. The estimated 200 trucks per day are in stark contrast to [Hudson Meadows'] development proposal which would have in excess of 7,000 vehicles per day.
>
> . . . .
>
> In addition to the above, and the fact that the area surrounding the Keegan site is largely heavy industrial in nature, the HMDC does not believe that the proposed landfill will negatively impact Kearny properties.

We also reject appellants' argument that the Commissioner of the DEPE failed to review the HMDC's plan amendment in light of the objectives and criteria set forth in the Statewide Solid Waste Management Plan. As appellants note, the goals of the Statewide Plan include protection and enhancement of environmental quality, conservation of natural resources, maximization of

recycling procedures, reduction of dependence on out-of-state disposal sites and regionalization of solid waste facilities. See 25 *N.J.R.* 721–22 (February 16, 1993); 26 *N.J.R.* 493 (January 18, 1994).[4] The Commissioner measured the HMDC's plan amendment against these objectives when he noted that it would remediate an old landfill site, would be a cornerstone in solving the State's deficiencies in disposal capacity, and would advance the State's recycling and regional solid waste disposal goals.

Finally, we reject appellants' argument that the HMDC and the DEPE failed to make an adequate analysis of the technical and financial feasibility of the HMDC's proposal for the closure of the Keegan Landfill and its construction of a new facility for non-processible solid waste. The SWMA provides that "[n]o person may proceed to construct, acquire, or operate any solid waste facility without having first obtained the approval of the commissioner [of the DEPE]." *N.J.S.A.* 13:1E–26(a). In order to obtain such approval, an applicant must prepare "an environmental impact statement" and "any preliminary surveys, investigations, studies, borings, maps, plans, drawings, and estimates of costs and of revenues as the commissioner may deem necessary." *Ibid.*; see *In re Issuance of Hazardous Waste Facility Permit to ICI Americas, Inc.*, 258 *N.J.Super.* 483, 610 *A.2d* 420 (App.Div. 1992). However, the SWMA does not impose a comparable obligation upon a solid waste management district before it may designate an area as being suitable for a solid waste facility as part of its solid waste management plan. *Cf. Regional Recycling, Inc. v. State, Dep't of Envtl. Protection, supra*, 256 *N.J.Super.* at 98–102, 606 *A.2d* 817, *aff'd o.b.*, 127 *N.J.* at 571 (holding that the DEPE cannot grant a solid waste facility permit pursuant to

---

4 In *A.A. Mastrangelo, Inc. v. Commissioner, Dep't of Envtl. Protection, supra*, 90 *N.J.* at 680, 449 *A.2d* 516, our Supreme Court directed the DEPE "to reduce the statewide plan to an identifiable and manageable document within 30 days of this decision." Although not germane to the issues raised by appellants, our review of the record on this appeal raises a serious question whether the DEPE has satisfied this obligation even at this late date.

*N.J.S.A.* 13:1E–26 to a facility which is not included in the adopted and approved solid waste management plan of the district in which it is located). Therefore, the Commissioner correctly concluded that the HMDC, acting in its capacity as a solid waste management district, could amend its solid waste management plan to designate the Keegan Landfill as the site for a new solid waste facility without conducting more detailed studies and analyses, even though the HMDC, as the proposed operator of the new solid waste facility, will be required to satisfy all the requirements of *N.J.S.A.* 13:1E–26, as well as to obtain all other necessary permits, before it can actually acquire, construct or operate the facility.

Affirmed.