218 N.J. Super. 1 (1985)
526 A.2d 1087
MEDFORD CONVALESCENT AND NURSING CENTER, PETITIONER-APPELLANT,
v.
DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 26, 1984.
Decided January 14, 1985.
*2 Before Judges KING, DEIGHAN and BILDER.
Joseph M. Gorrell argued the cause for appellant (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys; Burton L. Eichler, of counsel; Burton L. Eichler and Joseph M. Gorrell, on the brief).
Emerald L. Erickson, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Emerald L. Erickson, on the brief).
PER CURIAM.
Petitioner, Medford Convalescent and Nursing Center, appeals from a final order of the Division of Medical Assistance and Health Services (Division) denying it the use of the Medicare rate of return to calculate the building component of the Capital Facility Allowance cost center. The Division contends that the applicable regulation, N.J.A.C. 10:63-3.10, provides for a rate of return of 150% of petitioner's actual state authority mortgage. Petitioner contends the regulation requires the use of the Medicare rate of return. The sole issue on appeal is the proper interpretation of the regulation.
*3 Petitioner is a Long Term Care Facility (LTCF) which has been operating since July 1, 1980. Financing was arranged through the New Jersey Economic Development Authority which obtained an insured F.H.A. mortgage. Petitioner's facility contains 180 beds, approximately 70 to 75% of which are occupied by the recipients of medicaid benefits. This case involves the calculation of the medicaid reimbursement to which petitioner is entitled.
Medicaid reimbursement is jointly funded by the state and federal governments pursuant to Title XIX of the Social Security Act, 42 U.S.C. 1396 et seq., and the N.J. Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 et seq. Pursuant to these Acts, the Division is authorized to make all necessary rules and regulations to implement the program including insuring "that the amounts to be paid are reasonable". N.J.S.A. 30:4D-7(b). In furtherance of that responsibility the Division has adopted "cost accounting and rate evaluation" (CARE) guidelines which are contained in N.J.A.C. 10:63-3 et seq.
The regulations require that two rates be calculated: an historical rate reflecting actual costs, and a "screened" rate reflecting the application of various cost centers or rate components to a given project, N.J.A.C. 10:63-3.2. The LTCF receive the lower of the two rates. The dispute here arises within the "buildings" component of the "capital facilities allowance," (CFA) or cost center. N.J.A.C. 10:63-3.9 and .10. In this calculation the appraised value of property is multiplied by a certain interest factor. The propriety of the interest factor used is in issue.
N.J.A.C. 10:63-3.10 as pertinent to this dispute reads as follows:
(k) For existing LTCF's, the State will not increase the CFA rate in future years should the Medicare return on equity rate increase. Should this rate decrease by more than the reasonable cost of refinancing, both the interest rate and the amortization rate will be reduced. The same adjustments will be made should financing through a State authority be made available at lower interest rates.

*4 (1) For new LTCF's or for additions to existing LTCF's, the amortization rate will be established based upon the latest Medicare return on equity rate published at the inception of operations. The provisions of subsection (k) of this section will apply in subsequent years.
When petitioner commenced operations in July 1980 a medicaid reimbursement rate was established which included a CFA allowance based on the Medicare rate of return in accordance with N.J.A.C. 10:63-3.10(e). This was continued until January 1, 1982 when the Division adjusted the rate downward, contending that N.J.A.C. 10:63-3.10(1) provided for reductions when the facility was financed through a government authority.
Normally a new LTCF is entitled to multiply its appraised value by whatever the Medicare rate of return was at the inception of its operations. N.J.A.C. 10:63-3.10(e). However, respondent has determined as a matter of policy that where a new LTCF has available lower-cost financing through a government agency, its building component will be calculated at a lower interest factor after the initial year of operation. Instead of being paid at the Medicare rate of return, which for petitioner would be approximately 15.1%, it would be paid at the lesser rate of 150% of its actual mortgage rate. Petitioner's mortgage rate is 7.25%, and it would thus be paid at a rate of approximately 11.7%. In dollars this amounts to a difference of as much as $90,000 according to petitioner's calculations and $55,000 according to respondent.
Petitioner contends this interpretation is contrary to the intent of the guidelines and that it is entitled to continued reimbursement at the Medicare rate of return. In support of its position it points to the testimony of the drafters of the regulation, who interpreted the guidelines as requiring continued use of the medicaid rate; the introduction to the guidelines which states "[t]he department should not concern themselves with the method and attendant costs with which individual LTCFs are financed" (N.J.A.C. 10:63-3.9(b)(i)); the reliance by the nursing home industry on the principle that new construction *5 would be reimbursed at the Medicare rate, and the plain language of the regulation.
One cannot fail to have sympathy with the Division's desire to prevent a windfall by taking into account the low cost government loan which petitioner received. Its motivation is fully consistent with the legislative direction that it insure that the amounts paid are reasonable. And it may well be that the CFA rate should be adjusted downward from the Medicare return on equity rate when a LTCF receives the benefit of low cost government loans. We have difficulty however in reading N.J.A.C. 10:63-3.10 to achieve this result.
Regulations are subject to the same rules of construction as a statute. See Essex County Welfare Board v. Klein, 149 N.J. Super. 241, 247 (App.Div. 1977). The regulation should be construed in accordance with the plain meaning of its language, see Service Armament Co. v. Hyland, 70 N.J. 550, 556 (1976), and in a manner that makes sense when read in the context of the entire regulation. See Houman v. Mayor & Coun. Bor. Pompton Lakes, 155 N.J. Super. 129, 169 (Law Div. 1977).
The Division's interpretation of the controverted provision requires reading the last sentence of N.J.A.C. 10:63-3.10(k) as though it spoke in the past tense rather than the present tense  as though it said "the same adjustment will be made should financing through a State authority have been made available at lower interest rates." Such a rewriting is inconsistent with the plain language and also with the intent of the regulations as expressed at the start of the guidelines.
The guidelines promulgated herein have been developed with the following objectives and considerations:
1. The departments should not concern themselves with the method and attendant costs with which the individual LTCFs are financed and constructed or the arrangements under which they are acquired or leased. N.J.A.C. 10:63-3.9(b).
More in keeping with the language of the regulation is petitioner's reading which interprets sections (k) and (l) as *6 referring solely to refinancing. Such a construction gives internal sense to these provisions and is in keeping with the broad concepts set forth in the introductory sections of the guidelines. N.J.A.C. 10:63-3.9(b).
Reversed.