**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4431-19

IN THE MATTER OF
REQUEST FOR AGENCY
RULING UNDER N.J.S.A.
52:14B-8.

_____

Argued December 15, 2021 – Decided January 3, 2022

Before Judges Hoffman, Geiger and Susswein.

On appeal from the New Jersey Department of Health.

James P. Flynn argued the cause for appellant Bayonne Medical Center, LLC (Epstein Becker & Green, PC attorneys; James P. Flynn and Sheila Woolson, of counsel and on the briefs).

Francis X. Baker, Deputy Attorney General, argued the cause for respondent New Jersey Department of Health (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Francis X. Baker, on the brief).

Thomas A. Abbate argued the cause for intervenors NJMHMC, LLC and 29 E 29 Street Holdings, LLC (Decotiis, Fitzpatrick, Cole & Giblin, LLP, attorneys; Jeffery D. Smith, of counsel; Thomas A. Abbate, on the brief).

Lawrence Bluestone argued the cause for intervenor WTFK Bayonne, LLC (Genova Burns LLC, attorneys, join in the brief of intervenors NJMHMS, LLC and 29 E. 29 Street Holdings, LLC).

PER CURIAM

This appeal concerns a final agency decision of the New Jersey Department of Health (Department), in response to a petition filed by Appellant Bayonne Medical Center, LLC (BMC), for a declaratory ruling that a Certificate of Need (CN) was required for the transfer of real property from respondent-intervenor WTFK Propco, LLC (WTFK) to respondent-intervenor NJMHMC, LLC, doing business as Hudson Regional Hospital (HRH). Bayonne Medical Center, an acute care hospital, is located on the subject property (the Property). We affirm.

We glean the following facts from the record. In February 2008, ownership of Bayonne Medical Center was transferred from Bayonne Medical Center, Inc. to IJKG Opco, LLC (IJKG), doing business as CarePoint Health-Bayonne Medical Center. IJKG applied for and received a license and a CN to operate the hospital as a general acute care hospital. In February 2011, IJKG entered into a lease with Medical Properties Trust (MPT), which then owned the Property where the hospital was situated. Under the terms of the lease, IJKG maintained ownership and responsibility for assets and operation of the hospital,

2                                                                      A-4431-19

while MPT maintained ownership of the Property. The lease allowed IJKG to sublease the Property, subject to MPT's consent. In March 2020, IJKG agreed to sublease the Property to BMC.

In or about November 2019, MPT sold the Property to WTFK. Because the transaction was limited to the sale of the Property and did not affect the operation of any health care facility on the Property, a CN was not sought or obtained in connection with the conveyance of the real estate. Then, on June 1, 2020, HRH announced it reached an agreement to purchase the Property from WTFK. The sale of the Property closed on August 10, 2020. The sale made HRH the lessor to IJKG,[1] which still sought to sublease to BMC.

While the real estate transaction was underway, through a March 2020 Letter of Intent and a June 2020 Asset Purchase and Sale Agreement, IJKG agreed to sell the assets of Bayonne Medical Center to BMC, subject to both CN approval by the Department, and HRH's approval as required by the lease.

Because the proposed sublease involved a transfer of the operation of a general hospital, a CN was required pursuant to N.J.A.C. 8:33-3.3(a). On April 1, 2020, IJKG filed an application requesting expedited CN approval of the transfer of the hospital to BMC. On June 25, 2020, the Department advised

_____

[1] IJKG is not a party to this appeal.

3    A-4431-19

BMC that the CN application could not be reviewed on an expedited basis because N.J.A.C. 8:33-3.3 mandates that CNs for the transfer of ownership of a general hospital must undergo full review as set forth in N.J.A.C. 8:33-4.1(a).

Neither WTFK nor HRH consented to BMC taking over operation of Bayonne Medical Center as a sublessee. BMC contends there was "zero chance" HRH would agree to the sublease to BMC. HRH rejected BMC's request to approve the sublease, determining that BMC was unqualified.

On July 10, 2020, BMC petitioned the Department to issue a declaratory judgment under N.J.S.A. 52:14B-8 regarding whether a CN was required for the transfer of the property from WTFK to HRH. WTFK opposed the petition, contending that its pending contract with HRH was "for the sale of real estate only and has no impact on the health care facility license held by the current tenant of Bayonne Hospital." WTFK also contended a pure real estate transaction "does not increase or establish an ownership interest in a 'health care facility,' as required by N.J.A.C. 8:33-3.3(f)" and is exempt from the requirement for CN approval. In its reply, BMC argues that the Department should exercise jurisdiction over the real estate sale because recent amendments to N.J.S.A. 26:2H-5.1(b) "extended the Departments control over the transfer of title for real property on which a hospital operates . . . ." BMC further contended

that the amendments should apply retroactively even though the statute indicates the amendments took effect on July 20, 2020.

The Department undertook a contextual review of the enabling legislation, the Health Care Facilities Planning Act (the Act), N.J.S.A. 26:2H-1 to -26, and the Department's own implementing regulation, N.J.A.C. 8:33-3.3(f), and found that the transfer of real estate by an entity disassociated from the operation of a hospital does not require a CN. Accordingly, on July 31, 2020, the Deputy Commissioner of Health Systems responded to BMC's request and stated that a declaratory ruling was unnecessary.

The Deputy Commissioner explained that "[t]he Department has consistently interpreted the statutes and rules governing CN[s], including N.J.A.C. 8:33[-3.3](f)(4), as not extending to the sale of real property where a licensed health facility is located, unless it involves a change in ownership and operator of the facility." The Deputy Commissioner further explained "that the CN standard of review found at N.J.S.A. 26:2H-8 and N.J.A.C. 8:33-4.9 have no practical bearing on a real estate transaction." The Department declined to depart from its longstanding interpretation of its regulations without engaging in formal rulemaking, noting that to do so "could arguably be viewed as ad hoc rulemaking contrary to the Administrative Procedure Act (APA), N.J.S.A.

52:14B-1 [to -31], and the Office of Administrative Law's Rules for Agency Rule Making, N.J.A.C. 1:30-1 [to -6.7]."

The Deputy Commissioner noted that the Department's authority comes from the Healthcare Facilities Planning Act, N.J.S.A. 26:2H-1 to -26, to "regulate health care providers and services, not real property transactions." The specific requirement for a Certificate of Need is found in N.J.S.A. 26:2H-7 and states, "[n]o health care facility shall be constructed or expanded, and no new health care service shall be instituted" without a certificate. The Deputy Commissioner reiterated that "[s]ince this proposed transaction does not involve the construction of a new hospital by a currently licensed hospital, but rather the ownership of the land where a hospital is located, no CN is required under the [statute]."

Finally, the Deputy Commissioner stated: "When IJKG, LLC was awarded a CN by the Department to operate Bayonne Medical Center, no CN was required for [MPT] to acquire title to [the Property]. Furthermore, when [WTFK] acquired the [the Property] from [MPT], that transaction also did not require a CN." She added that "[t]he Department has not historically required a CN for transactions solely involving the land on which a health care facility is located." This appeal followed.

A-4431-19

We denied BMC's motion to supplement the record and granted WTFK's motion to strike the references to the proposed supplemental materials from BMC's brief. We also granted the Department's motion to strike references to the supplemental materials contained in BMC's amended brief.

BMC raises the following points for our consideration:

POINT I

A CN IS REQUIRED TO TRANSFER THE REAL PROPERTY ON WHICH A HOSPITAL OPERATES.

POINT II

THE TRANSFER OF TITLE TO THE BAYONNE REAL PROPERTY REQUIRES A CN.

POINT III

REQUIRING THE DEPARTMENT TO INTERPRET AND APPLY THE CN REGULATIONS CONSISTENT WITH THEIR PLAIN LANGUAGE IS NOT RULEMAKING.

We are guided by the following well-established legal principles. "Appellate review of an agency's determination is limited in scope." Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009). "[A]n appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or

unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp., 194 N.J. 413, 422 (2008). When undertaking that review, we examine:

> (1) whether the agency's action violates express or implied legislative policies . . .;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018).]

Where an agency's decision satisfies these criteria, an appellate court should accord substantial deference to the agency's fact-finding and legal conclusions, recognizing "the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, 199 N.J. at 10 (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). "An administrative agency's interpretation of a statute it is charged with enforcing is entitled to great weight." In re Saddle River, 71 N.J. 14, 24 (1976). The Appellate Division accords great deference to an agency's "interpretation and implementation of its rules

enforcing the statutes for which it is responsible."  In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 489 (2004).

The party challenging the agency's action bears the burden of demonstrating that the agency's action was arbitrary, capricious, or unreasonable.  Lavezzi v. State, 219 N.J. 163, 171 (2014) (citing In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

We begin our analysis by reviewing the language of the statute and regulations.  In 1971, New Jersey adopted the Health Care Facilities Planning Act (the Act), N.J.S.A. 26:2H-1 to -26, which sets forth a regulatory system intended to provide residents with high-quality health care services at a contained cost.  N.J.S.A. 26:2H-1.

N.J.S.A. 26:2H-7 provides in pertinent part: "No health care facility shall be constructed or expanded, and no new health care service shall be instituted after the effective date of [the Act] except upon application for and receipt of a [CN] as provided by [the Act]."  N.J.S.A. 26:2H-7 applies to "[t]he initiation of any health care service," "[t]he purchase . . . of major movable equipment whose total cost is over $2 million"; and "[t]he expenditure by a licensed health care facility of over $2 million for construction of a new health care facility[.]"

Notably, N.J.S.A. 26:2H-7 does not state it is applicable to the purchase of land on which an existing health care facility is located.

Similarly, N.J.A.C. 8:33-1.1(b) provides that the CN rules promulgated to implement the Act and the Certificate of Need Act, L. 1998, c. 43, "apply to the initiation, construction, and/or expansion of all health care facilities and services identified in the [Act] . . . ." N.J.A.C. 8:33-3.3(a) provides that a CN is required for "a transfer of ownership . . . of an entire general hospital" or a "transfer that will result in a new Medicare provider number for the hospitals involved in the transfer . . . ."

In contrast, N.J.A.C. 8:33-3.3(f) provides that the CN regulations apply to any entity that "is the licensed operator of a facility or which owns the facility's real property." In turn, N.J.A.C. 8:33-3.3(f)(4) defines "ownership" of a health care facility to include not only "shares of stock" or "[o]wnership of a proprietorship or any other entity which operates a health care facility[,]" but also "holding title to real property which is used to operate the health care facility . . . ." Relying on N.J.A.C. 8:33-3.3, BMC argues that a CN is required to "sell or change ownership of the real estate of an acute care hospital or its operations."

A-4431-19

BMC supports its argument with the 1998 revisions to the Act. The Senate and Budget Appropriations Committee Statement on the amendments to N.J.S.A. 26:2H-6.1, states: "To ensure community input when ownership of an acute care hospital is to be transferred or a health care facility or service which is subject to CN requirements may be closed or eliminated . . . the bill requires the State Health Planning Board to conduct at least one public hearing in the area . . . ." S. 1181 (1998) (Committee Amendments). BMC contends the Department has improperly refused "to enforce the clear language of its regulations and the clear intent of the statutory policy underlying those regulations."

BMC also relies on N.J.S.A. 26:2H-5(e), which focuses on conditions of licensure of a general hospital. Finally, BMC cites to N.J.S.A. 26:2H-14 which focuses on operation of a hospital without a license and the associated penalties.

We are unpersuaded by these arguments. The 1998 amendments and comments do not specify that a CN is required to transfer real property when operations will not be affected. N.J.S.A. 26:2H-5(e) does not regulate CNs. N.J.S.A. 26:2H-14 does not enforce CN requirements. Nor is there any contention that the transfer resulted in a new Medicare provider number for the hospital. More fundamentally, the transfer of the Property does not include a

11

transfer of ownership of an entire general hospital or directly affect the operation of the hospital or its licensure.

Moreover, the plain language of the statute governing the issuance of CNs reveals no legislative intent to require the issuance of a new CN when only the real estate is transferred. To obtain a CN, an applicant must demonstrate that the proposed action:

> is necessary to provide required health care in the area to be served, can be economically accomplished and maintained, will not have an adverse economic or financial impact on the delivery of health care services in the region or Statewide, and will contribute to the orderly development of adequate and effective health care services.
>
> [N.J.S.A. 26:2H-8; see also N.J.A.C. 8:33-4.9(a).]

In addition, CN applicants must demonstrate that the proposed action will promote access to low-income persons, racial minorities, and enhance the quality of care. N.J.A.C. 8:33-4.10(a)-(b).

The factors the Department must consider include:

> (a) the availability of facilities or services which may serve as alternatives or substitutes, (b) the need for special equipment and services in the area, (c) the possible economies and improvement in services to be anticipated from the operation of joint central services, (d) the adequacy of financial resources and sources of present and future revenues, (e) the availability of sufficient manpower in the several professional

A-4431-19

disciplines, and (f) such other factors as may be established by regulation. The State Health Plan may also be considered in determining whether to approve a [CN] application.

[N.J.S.A. 26:2H-8; see also N.J.A.C. 8:33-4.9(a).]

The existing CN for Bayonne Medical Center was issued after consideration of these factors, which are not pertinent to a transfer of the Property that does not include transfer of the hospital. Therefore, reconsideration of these factors because of a pure real estate transaction is unnecessary.

Upon issuance of a CN for an acute care hospital, the recipient may apply for and receive an operating license from the Department, upon satisfying related substantive regulatory criteria.

The Department noted that the Act "vests the Department with authority to regulate healthcare providers and services, not real property transaction." It correctly observed that the primary focus of the Act is to regulate licensed health care facilities, not commercial real estate transactions. "Healthcare facility" is a statutory term of art. A real estate transaction between two entities that are not engaging in regulated activity within the scope of the Act, is not a regulated event giving rise to the requirement for obtaining a CN. The Department further observed that requiring CN approval for a pure real estate transfer would contradict the Department's longstanding interpretation of the Act and its

implementing regulations that CN approval was not required if the conveyance does not involve a change in ownership or operator of a licensed health care facility. Imposing a requirement of CN approval in such circumstances would arguably require formal rulemaking, not an ad hoc declaratory ruling.

We have recognized that "'[t]he paramount objective of the Act is to promote only those 'highest quality' health care services that are justifiable in a cost benefit sense[,]' and N.J.S.A. 26:2H-7 accomplishes this goal by placing a direct check on proposed expansion programs." Radiological Soc'y of N.J. v. N.J. State Dep't of Health, 208 N.J. Super. 548, 552-53 (App. Div. 1986) (quoting In re 1976 Hosp. Reimbursement For William B. Kessler Mem'l Hosp., 78 N.J. 564, 583 (1979) (Handler, J., concurring)).

As to the applicability of N.J.S.A. 26:2H-5.1b(a)(3), which now requires a hospital to "notify the Department no less than [ninety] days prior to signing an agreement for the sale or lease of land or property on which a hospital is located[,]" the Department viewed the enactment of this section as evidence that CN approval is not required to sell the real estate. The Department noted it was "well known to the regulated community" that CN approval was not required.

Under N.J.S.A. 26:2H-7, a CN is only required to initiate a "health care facility" or "health care service" as defined by N.J.S.A. 26:2H-2. In turn, the

Department's implementing regulations define "health care facility" more narrowly, providing that a health care facility is "the facility or institution . . . engaged principally in providing services for . . . diagnosis or treatment of human disease, pain, injury, deformity or physical condition, including, but not limited to, a general hospital . . . ." N.J.A.C. 8:33-1.3. The regulations clearly do not apply to the owner of the underlying real estate upon which the facility is located if the owner itself does not provide medical services. Such is the case here, where the owner of the Property is not a health care provider.

We recognize that N.J.A.C. 8:33-3.3(f) states that it applies to an entity "which owns the facility's real property" and that "a transfer of ownership which requires a [CN] is defined as an acquisition or transfer which will increase or establish an ownership interest in a health care facility, as defined in N.J.A.C. 8:33-1.3, through purchase, lease . . . ." In this case neither WTFK nor HRH held a CN for the hospital, were licensed to operate a hospital, or at any time operated the hospital. Requiring them to obtain a CN as a result of the sale of the underlying real estate misconstrues the legislative scheme of the Act and the regulatory scheme of the implementing rules. Moreover, a regulation "should be construed . . . in a manner that makes sense when read in the context of the

entire regulation."  Medford Convalescent & Nursing Ctr. v. Div. of Med. Assistance & Health Servs., 218 N.J. Super. 1, 5 (App. Div. 1985).

The sale of the Property did not involve the construction or expansion of a health care facility or the provision of a new health care service.  See N.J.S.A. 26:2H-7.  Nor did it involve the purchase of "major moveable equipment whose total cost is over $2 million."  Ibid.  Moreover, the "action proposed" did not involve a new health care facility or service as contemplated by N.J.S.A. 26:2H-8.  The hospital and the services it rendered already existed and were not changed by the conveyance of the Property.

The purpose of the rules is to implement the provisions of the Act. N.J.A.C. 8:33-1.1(a).  They are intended to be consistent with the Act.  To that end, the rules mirror certain language in the Act.  For example, the rules state that they "apply to the initiation, construction and/or expansion of all health care facilities and services as identified in [the Act] . . . ."  N.J.A.C. 8:33-1.1(b). Imposing additional CN requirements would be contrary to the legislature's findings and declarations expressed in N.J.S.A. 26:2H-6.1 and would serve no purpose or goal envisioned by the Act.

Since neither WTFK nor HRH operated or conducted the hospital, they were not required to obtain a license to do so.  See N.J.S.A. 26:2H-14 (requiring

any entity that operates or conducts a health care facility to first obtain the license required by the Act). In addition, the notice to the Department required by N.J.S.A. 26:2H-5.1b(a)(3) as a condition of licensure, only applies to a "hospital's intent to sign an agreement to sell or lease land or property on which the hospital is located." The hospital never owned or agreed to sell the Property.

In this case, requiring the new owner of the Property, which does not operate the hospital or provide health care services, to obtain a CN would serve no legitimate purpose and makes no sense. The Department's longstanding interpretation of the Act is based on this recognition. The Legislature has not amended the Act to override that interpretation.

"Substantial deference" to the Department's "construction" of its enabling legislation "is particularly appropriate considering the Legislature's long-standing acceptance of that interpretation." Matturi v. Bd. of Trs. of Jud. Ret. Sys., 173 N.J. 368, 383 (2002); see also Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 212 (1991) ("The meaning ascribed to legislation by the administrative agency responsible for its implementation, including the agency's contemporaneous construction, long usage, and practical interpretation, is persuasive evidence of the Legislature's understanding of its enactment.").

Accordingly, we apply enhanced deference to an agency's longstanding, consistently applied interpretation of its regulations:

> Our deference is even greater because the Board has followed this interpretation for more than four decades. "Such continued interpretation and practice by the agency which administers a statute is entitled to great weight." Moreover, "the fact that the Legislature has not acted in response to an agency's interpretation or practice is 'granted great weight as evidence of its conformity with the legislative intent.'"
>
> [Piatt v. Police and Firemen's Ret. Sys., 443 N.J. Super. 80, 99-100 (App. Div. 2015) (citations omitted).]

Applying enhanced deference to the Department's longstanding "interpretation and implementation of its rules enforcing the statutes for which it is responsible," Freshwater Wetlands, 180 N.J. at 489, we discern no basis to disturb the Departments final decision, which was supported by the record and was not arbitrary, capricious, or unreasonable, did not violate express or implied legislative policies, or ignore relevant factors.

To the extent we have not specifically addressed any of BMC's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-4431-19