**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1344-24

MARY D. FOREST and
TARKETIA AJAYI,

      Plaintiffs-Appellants,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES,

      Defendant-Respondent.

_____

Argued February 25, 2026 – Decided March 19, 2026

Before Judges Mayer and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000172-24.

John L. Pritchard argued the cause for appellants.

Barkha Patel, Deputy Attorney General, argued the cause for respondent (Jennifer Davenport, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Barkha Patel, on the brief).

PER CURIAM

Plaintiffs Mary D. Forest and Tarketia Ajayi, beneficiaries under the will of Clerveaux Benoit, appeal a judgment denying their request to declare invalid a lien defendant Division of Medical Assistance and Health Services (DMAHS) placed on property that had been owned by Clerveaux and his wife Philomene Benoit.[1]  Philomene was a Medicaid beneficiary who predeceased Clerveaux. Plaintiffs also appeal an order denying their counsel-fee application.  Because the trial court correctly interpreted applicable statutory and regulatory law, we affirm.

I.

Clerveaux and Philomene acquired title to the property at issue in 1986 and held it as tenants by the entirety.  Philomene was a Medicaid beneficiary from August 1, 2003, until her death on May 3, 2012.  The New Jersey Medicaid program expended $415,501.30 for medical care and services provided to her. DMAHS's estate recovery information system indicates DMAHS sent notices on June 29, 2012, August 16, 2012, and November 14, 2012, to the property. According to DMAHS's counsel, copies of those notices no longer exist due to

---

[1]  Because Clerveaux and Philomene had the same last name, we refer to them by their first names for ease of reading.  In doing so, we mean no disrespect.

the passage of time, but the notices would have contained references to DMAHS's claim of a Medicaid lien and requests for information regarding the assets of Philomene's estate and whether she had a surviving spouse. The estate recovery information system was updated on January 11, 2013, to indicate Philomene had a surviving spouse.

In early April 2019, DMAHS received a letter from Tamarra Henry, who identified herself as Philomene's daughter and the executor of her estate. Henry's letter acknowledged Philomene had received Medicaid benefits and the family had been "told by a Medicaid representative back in 2012 that there was a possibility a lien would be placed on [Philomene's] home to cover the healthcare costs she incurred" and "that Medicaid would wait until the surviving spouse, [her] father, Clerveaux . . . passed away before any action would be taken." In the same letter, she informed DMAHS Clerveaux had died in June 2017 and inquired about the status of the lien.

In an April 11, 2019 letter, DMAHS advised Henry it was asserting a claim against Philomene's estate in the amount of $415,501.30 and was filing a lien pursuant to N.J.S.A. 30:4D-7.2(a). DMAHS also informed Henry that due to the lien, "any disposal of real property cannot occur without the consent or cooperation of [DMAHS]." On May 13, 2019, DMAHS sent Henry a copy of a

3

lien claim it had docketed in the Superior Court on May 13, 2019. DMAHS's lien specifically referenced the property, the cost of the benefits Philomene had received, and N.J.S.A. 30:4D-7.2 to -7.6.

On August 1, 2024, plaintiffs filed a verified complaint against DMAHS and an application for an order to show cause. Identifying themselves as beneficiaries under Clerveaux's will, plaintiffs sought a judgment declaring the lien legally ineffective against Clerveaux's estate, the property, or the proceeds of the sale of the property. According to plaintiffs, the property had been sold in 2021, and proceeds of the sale were held in escrow due to the lien. Plaintiffs also sought a counsel-fee award. In the verified complaint, plaintiffs acknowledged Philomene had received benefits from DMAHS but asserted DMAHS's lien to recover the costs of those benefits was not effective against the property because Clerveaux was the property's sole owner and "sole surviving tenant by the entireties."

The court entered an order to show cause. DMAHS opposed plaintiffs' application. The court heard argument, asked for supplemental briefing, and heard argument again after receiving the parties' submissions.

On November 13, 2024, the court placed on the record a decision denying plaintiffs' application. The court rejected plaintiffs' assertion DMAHS had not

properly recorded or provided notice of the lien. The court also rejected plaintiffs' argument DMAHS was precluded from using the property to recoup Philomene's Medicaid costs because when Philomene died, ownership of the property had passed to Clerveaux as the surviving tenant by the entirety. The court concluded that "any other interpretation [of the applicable statutes and regulations] would wholly upend what is a necessary service benefit that is given to people who need it at the time they most need it." The court memorialized its decision in a December 10, 2024 judgment.

The court permitted supplemental submissions regarding plaintiffs' counsel-fee application. The court denied the application in a December 5, 2024 order with an attached statement of reasons. The court found plaintiffs were not prevailing parties and were not entitled to a fee award under Rule 4:42-9(a)(2).

This appeal followed. Plaintiffs contend DMAHS cannot encumber the property with a Medicaid lien because Philomene had a surviving spouse and owned the property with him as tenants by the entirety. They also contend the lien cannot be enforced because DMAHS did not timely file the lien and enforcement of the lien would constitute an impermissible taking. Finally, they argue the court erred in denying their counsel-fee application. Unpersuaded by those arguments, we affirm.

II.

Because the meaning of a statute is a question of law, we review a trial court's statutory interpretation de novo. In re H.D., 241 N.J. 412, 418 (2020); Manalapan Realty, L.P., v. Twp. of Comm. of Manalapan, 140 N.J. 366, 378 (1995). In performing that de novo review, we are guided by the well-established principles of statutory construction. Those principles apply equally to our interpretation of regulations. Medford Convalescent & Nursing Ctr. v. Div. of Med. Assistance & Health Servs., 218 N.J. Super. 1, 5 (App. Div. 1985) (finding "[r]egulations are subject to the same rules of construction as a statute").

When interpreting a statute, we "determine and give effect to the Legislature's intent." In re H.D., 241 N.J. at 418 (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)). "[S]tatutory construction begins with an examination of the plain language of the statute, 'ascrib[ing] to the . . . words their ordinary meaning and significance.'" State v. Higginbotham, 257 N.J. 260, 280 (2024) (omission and second alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "We 'may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed

6

by way of the plain language.'" Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). To determine legislative intent, we "look not only at the particular statutory language but also to the design of the statute as a whole." Est. of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 219 (App. Div. 2004).

Applying those rules, we consider the statutory scheme at issue. "The federal Medicaid Act, under Title XIX of the Social Security Act, 42 U.S.C. [§§ 1396 to 1396w-8], authorizes a joint federal-state program to provide assistance to individuals whose income and resources are insufficient to meet the costs for necessary medical services." D.C. v. Div. of Med. Assistance & Health Servs., 464 N.J. Super. 343, 353-54 (App. Div. 2020). "Participation in the Medicaid program is optional for states; however, 'once a State elects to participate, it must comply with the requirements' of the federal Medicaid Act and federal regulations adopted by the Secretary of Health and Human Services in order to receive federal Medicaid funds." Id. at 354 (quoting Harris v. McRae, 448 U.S. 297, 301 (1980)).

"New Jersey's participation in the federal Medicaid program was authorized by the enactment of the New Jersey Medical Assistance and Health Services Act (MAHSA), N.J.S.A. 30:4D-1 to -19.5." Ibid. "Under its enabling

legislation, [the New Jersey Department of Human Services (DHS)] is designated as 'the single State agency to administer the provisions of [the Medicaid Act].'" Ibid. (quoting N.J.S.A. 30:4D-5). "[T]he Director of DHS has the authority to promulgate rules, regulations, and administrative orders necessary to administer the Medicaid program." Ibid. DMAHS is the agency within DHS responsible for implementing the State Medicaid program. Ibid. DMAHS "is required to manage the State's Medicaid program in a fiscally responsible manner." Est. of Dizon by Finamore v. Dep't of Human Servs., 481 N.J. Super. 451, 459 (App. Div. 2025).

"To further expand available funding for Medicaid benefits, the 'federal Medicaid law has required participating states to enact certain "estate" recovery provisions as part of their medical assistance plans.'" Ibid. (quoting DeMartino, 373 N.J. Super. at 217). "In doing so, Congress intended to give states 'wide latitude' in seeking estate recoveries." DeMartino, 373 N.J. Super. at 219 (quoting In re of Est. of Thompson, 586 N.W.2d 847, 851 (N.D. 1998)). "Allowing states to recover from the estates of persons who previously received assistance furthers the broad purpose of providing for the medical care of the needy; the greater amount recovered by the state allows the state to have more

A-1344-24

funds to provide future services." Ibid. (quoting Belshe v. Hope, 38 Cal. Rptr. 2d 917, 925 (Cal. Ct. App. 1995)).

The Legislature "enacted statutes to comply with the federal estate recovery requirements" and the commissioner of DMAHS "adopted regulations to comply with" those requirements. In re Est. of Brown, 448 N.J. Super. 252, 259 (App. Div. 2017). For Medicaid recipients, who, like Philomene, "became deceased on or after April 1, 1995 for whom a Medicaid payment was made on or after October 1, 1993," the Legislature authorized DMAHS to file a lien against and seek recovery "from the estate of the deceased recipient for [Medicaid] assistance correctly paid . . . on [the deceased recipient's] behalf for all services received when he [or she] was [fifty-five] years of age or older." N.J.S.A. 30:4D-7.2(a)(2); see also 42 U.S.C. § 1396p(b)(1)(B); N.J.A.C. 10:49-14.1(d). As we held in Dizon, "[t]he plain meaning of the statute permits the Division to seek reimbursement for all Medicaid benefits paid on a deceased recipient's behalf by filing a lien against their estate." 481 N.J. Super. at 461.

"[T]o satisfy the federal estate recovery requirements, states must define a decedent's estate to include at least 'all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law[.]'" In re Est. of Brown, 448 N.J. Super. at 258 (quoting 42 U.S.C.

§ 1396p(b)(4)(A)). Federal law also authorizes states to broadly define the term "estate" to include "any other real and personal property and other assets in which the individual had any legal title or interest at the time of death . . . including such assets conveyed to a survivor . . . of the deceased individual through joint tenancy, tenancy in common, survivorship, . . . or other arrangement." 42 U.S.C. § 1396p(b)(4)(B).

Under N.J.S.A. 30:4D-7.2(a)(3), an "estate" includes:

> all real and personal property and other assets . . . as defined in N.J.S.[A.] 3B:1-1, as well as any other real and personal property and other assets in which the recipient had any legal title or interest at the time of death, to the extent of that interest, including assets conveyed to a survivor, heir or assign of the recipient through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement.

See also N.J.S.A. 3B:1-1 (defining estate as "all of the property of a decedent . . . as the property is originally constituted and as it exists from time to time during administration"). The corresponding regulation contains the same definition of estate as set forth in N.J.S.A. 30:4D-7.2(a)(3). See N.J.A.C. 10:49-14.l(l)(1) to (2). Thus, consistent with federal law, under New Jersey law, "[i]t is clear an estate asset is widely defined to include all interests a Medicaid recipient possessed at the time of death." Dizon, 481 N.J. Super. at 461. For

10

Philomene that definition included the interest in the property she held at the time of her death.

That she held her interest in the property as a tenancy by the entirety does not render it an uncollectible asset under the Medicaid statutes. Although the definitions of estate do not specifically reference tenancies by the entirety, the breadth of the definitions clearly encompass them. See Est. of Marusich v. State, ex rel., Dep't of Health, Off. of Healthcare Fin./Equalitycare, 313 P.3d 1272, 1278 (Wyo. 2013) (holding that property held by a tenancy by the entirety may be encumbered by a Medicaid lien under the expanded definition of "estate" Wyoming adopted pursuant to 42 U.S.C.A. § 1396p(b)(4)(A) to (B) even though tenancies by the entirety were not specifically referenced). And consistent with estate recovery requirements, the DMAHS commissioner adopted N.J.A.C. 10:49-14.1(m), a regulation that expressly authorizes liens on property held as a tenancy by the entirety: "If the deceased Medicaid beneficiary held a tenancy-by-the-entirety or joint tenancy with a right of survivorship, then the lien shall state that it encumbers all of the property."

That Philomene was survived by her spouse does not impact DMAHS's ability to place a lien on the property; it impacts the timing of its efforts to enforce and recover based on the lien. Federal Medicaid law plainly states that

11

recovery "may be made only after the death of the individual's surviving spouse." 42 U.S.C.A. § 1396p(b)(2). Thus, "[s]tates may recover Medicaid benefits after the death of the recipient's surviving spouse . . . ." DeMartino, 373 N.J. Super. at 217 (citing 42 U.S.C.A. § 1396p(b)(2)).

New Jersey law is consistent with federal law. If a Medicaid beneficiary dies and leaves no surviving spouse, DMAHS can recover benefit costs from the deceased beneficiary's estate. N.J.A.C. 10:49-14.1(a)(1). However,

> [e]ffective for estates pending on or created after October 4, 1999, if a family member of a deceased Medicaid beneficiary has, prior to the beneficiary's death, continuously resided in a home owned by the beneficiary at the time of the beneficiary's death, and that home was the beneficiary's primary residence, and was and remains the family member's primary residence, the Division may record a lien against the property, but will not enforce the lien until the property is voluntarily sold, or the resident family member either dies or vacates the property.
>
> [N.J.A.C. 10:49-14.1(g).]

Plaintiffs focus on the language of N.J.A.C. 10:49-14.1(a)(1) but disregard the language of N.J.A.C. 10:49-14.1(g). That we cannot do. See In re Commitment of W.W., 245 N.J. 438, 449 (2021) ("[A] statute must 'be read in [its] entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole.'" (second alteration

12

in original) (quoting In re D.J.B., 216 N.J. 433, 440 (2014))). Applying plaintiffs' overly-narrow interpretation of N.J.A.C. 10:49-14.1(a)(1) would render meaningless the language of N.J.A.C. 10:49-14.1(g) and 42 U.S.C.A. § 1396p(b)(2) and would be contrary to clear legislative intent behind the federal and state Medicaid statutory schemes.

We are equally unconvinced by plaintiffs' argument the lien is unenforceable because it was untimely. N.J.S.A. 30:4D-7.4 does not impose a time limit for the filing of a lien. For estates created on or after October 4, 1999, N.J.A.C. 10:49-14.1(d) provides: "the Division shall file any claim or lien against an estate under this section within three years after receiving actual written notice from the personal representative of the estate or any other interested party of the death of the Medicaid beneficiary." The regulation sets a timeframe for filing a claim or a lien but does not require DMAHS to file the claim or lien in the Superior Court or docket or record the claim or lien. Plaintiffs read that language into the regulation. We cannot do so. "To engraft [language] to a statute . . . far exceeds the judiciary's role in such matters." Simadiris v. Paterson Pub. Sch. Dist., 466 N.J. Super. 40, 49 (App. Div. 2021). As the trial court found, DMAHS complied with the regulation when it submitted its claim in 2012, as confirmed by DMAHS's estate recovery

information system and Henry's April 2019 letter. We have no basis to disturb the trial court's legal conclusion and factual finding on that issue.

Plaintiffs contend on appeal that the lien infringed on Clerveaux's constitutional property rights. Clerveaux did not challenge the lien during his lifetime, and the trial court declined to consider the constitutional argument plaintiffs' counsel attempted to make during argument, finding plaintiffs had not previously raised it. We generally "decline to consider questions or issues not properly presented to the trial court . . . unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div.1959)); see also Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 145 (App. Div. 2018) (applying "well-settled" principle that appellate court will not consider an issue that was not raised before the trial court). But even considering it, we are unpersuaded by plaintiffs' argument the lien is an unconstitutional taking.

"The New Jersey Constitution provides protections against governmental takings of private property without just compensation, coextensive with the Takings Clause of the Fifth Amendment of the United States Constitution." Klumpp v. Borough of Avalon, 202 N.J. 390, 405 (2010).

> A constitutional taking may occur in one of two ways: 1) via physical taking, in which the government takes title to private property or "authorizes a physical occupation [or appropriation] of property"; or 2) via regulatory taking, through which a government regulation deprives the property owner of all economically viable use of their land.
>
> [Ibid. (alteration in original) (quoting Yee v. City of Escondido, 503 U.S. 519, 522 (1992)).]

"To accomplish a physical taking, the government may either enter the land without authorization or exercise its power of eminent domain through a condemnation proceeding." Id. at 405-06. DMAHS's lien is not an unconstitutional "taking[] of private property without just compensation." Id. at 405. It is an effort to obtain reimbursement of the cost of medical benefits undisputedly paid on Philomene's behalf through her interest in the property.

Plaintiffs contend the property should be excluded from the reach of the statutes at issue because Clerveaux and Philomene purchased it in 1986. That argument is flawed because plaintiffs' proposed grandfathering provision is nowhere in the statutes or regulations. Again, we cannot add language to a statute, especially language that is inconsistent with the existing statutory language. The Legislature expressly set forth the scope of DMAHS's authority to impose a lien in N.J.S.A. 30:4D-7.2, limiting it based on the date the Medicaid recipient died and received benefits, not based on the date the recipient

15

purchased the property to be encumbered.  See N.J.S.A. 30:4D-7.2(a)(2).  We cannot "rewrite a plainly-written enactment of the Legislature."  Higginbotham, 257 N.J. at 280 (quoting O'Connell, 171 N.J. at 488).

For all of those reasons, we affirm the December 10, 2024 judgment.  We affirm the December 5, 2024 order denying plaintiffs' counsel-fee application for the reasons set forth in the trial court's attached statement of reasons.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1344-24