**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0479-24

NEW JERSEY MOTOR
VEHICLE COMMISSION,

     Petitioner-Respondent,

v.

POWER MOTORS, LLC,

     Respondent-Appellant.

_____

NEW JERSEY MOTOR
VEHICLE COMMISSION,

     Petitioner-Respondent,

v.

NORTH WARREN AUTO
SALES, LLC,

     Respondent-Appellant.

_____

Argued November 6, 2025 – Decided December 18, 2025

Before Judges Mayer, Gummer and Paganelli.

On appeal from the New Jersey Motor Vehicle Commission, Docket Nos. 28721 and 28723.

Peter Slocum argued the cause for appellants (Lowenstein Sandler LLP, attorneys; Peter Slocum and Nicholas Matthews, on the briefs).

Jennifer R. Jaremback, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Jennifer R. Jaremback, on the brief).

PER CURIAM

Power Motors, LLC (Power Motors) and North Warren Auto Sales, LLC (North Warren) (collectively, Applicants) appeal from a final agency decision by the New Jersey Motor Vehicle Commission (MVC) denying their applications for motor vehicle dealer licenses for failure to comply with the requirements of N.J.A.C. 13:21-15.4(d). We affirm.

Applicants sought to sell used cars at a physical multi-dealer location (MDL) in Washington Township, New Jersey. Power Motors signed a lease agreement with WNAG West (WNAG) for a building located at 30 State Route 31 in Washington. WNAG already owned and operated an existing MDL in Hackettstown. After signing the lease, Power Motors filed an application with the MVC to obtain a used motor vehicle license for an MDL at 30 State Route 31.

North Warren also signed a lease with WNAG to operate a used motor vehicle sales office at 30 State Route 31. North Warren applied to the MVC for a used motor vehicle dealer license for an MDL around the same time as Power Motors.

WNAG contacted the MVC to discuss operating an MDL at 30 State Route 31. It specifically sought to address modifications to the physical building at the location to comply with MVC regulations. Attorneys for WNAG and the MVC exchanged correspondence regarding the proposed MDL at 30 State Route 31.

In anticipation of operating an MDL at that location, WNAG hired an architect to confirm the existing building complied with the 2018 International Building Code (2018 IBC). The architect confirmed the building had a fire suppression system approved by the local code official and the interior walls of the structure were built to provide separate, independent offices. According to the architect, the existing building did not require a firewall under N.J.A.C. 13:21-15.4(d) because the fire suppression system qualified as a fire partition.

WNAG also retained a fire protection company, which confirmed the fire sprinkler system at 30 State Route 31 complied with the municipal fire sprinkler

3

code.  In addition, the municipality issued a certificate of approval for occupancy of that building.

Ernest DiStefano, a MVC compliance officer, investigated the property and building in April 2023.  He photographed the location of the building, the building's walls, and the individual offices within the building.  Three months later, the MVC asked Applicants to provide information supporting their contention that the building qualified as a type "B" location and was therefore exempt from N.J.A.C. 13:21-15.4(d) of the MVC's regulations, known as the firewall requirement.

In response, WNAG submitted a letter from Edward J. Rossi, President of Rossi Automotive Group.  According to Rossi, his company operated a new and used motor vehicle dealership at 30 State Route 31 until 2005.  He also stated that another business, Rossi Suzuki of Washington (SOW), was registered and licensed at the same location from 1991 through 2007.

In a supplemental certification, submitted after the MVC's initial denial of licenses to Power Motors and North Warren to operate an MDL at 30 State Route 31 and after Rossi had testified at a hearing before an Administrative Law Judge (ALJ) contesting the MVC's license denials, Rossi explained he had

4

operated a dealership at 30 State Route 31, incorporated as Rossi Pontiac Buick GMC, Inc. (Rossi Auto), from 1975 to 2005.

According to Rossi's certification, by the early 1990s, Rossi Auto expanded to sell Suzuki vehicles. Because General Motors did not authorize Rossi Auto to sell other-branded vehicles, Rossi Auto registered SOW as a fictitious name. Rossi Auto then opened a Suzuki dealership at 29 State Route 31, across from its place of business. However, SOW maintained its registered place of business at 30 State Route 31, the same as Rossi Auto.

Rossi described SOW as a separate entity from Rossi Auto. However, Rossi acknowledged SOW operated under a "doing business as" designation to sell Suzuki vehicles.

The MVC, through DiStefano, investigated the relationship between Rossi Auto and SOW. After obtaining business records from the New Jersey Department of Treasury, Division of Revenue and Enterprise Services (DORES), DiStefano confirmed only Rossi Auto, under the name "Rossi Pontiac Buick GMC, Inc.," had a registered office at 30 State Route 31. He also confirmed SOW was registered as a fictitious name. Additionally, DiStefano reviewed the MVC's dealer list and found only Rossi Auto, under the name

5

"Rossi Chevy Buick GMC," operated at 30 State Route 31 prior to March 6, 2006.[1]

On August 29, 2023, the MVC sent Applicants notices of proposed license denials. Applicants requested a hearing through the Office of Administrative Law. The matter was assigned to an ALJ to determine whether Applicants were exempt from the MVC's firewall requirement.

At the hearing before the ALJ, DiStefano testified on behalf of the MVC. He explained only one MDL in New Jersey had firewalls separating each office space. DiStefano described that MDL, located in Phillipsburg, as the "tombs" because the structure was "built of completely masonry block" and was "crazy to look at." DiStefano further explained the Phillipsburg MDL appeared "dilapidated." He believed there were no longer any licensed businesses operating within the Phillipsburg MDL.

Jessica O'Connor, a regulatory officer with the MVC's Office of Legal Affairs, also testified. O'Connor described how the MVC processed applications for used motor vehicle dealer licenses, including a form, to be completed by the dealer, certifying the existence of proper walls. O'Connor explained the

---

[1] Only businesses established before March 6, 2006, qualified for an exemption from the MVC's firewall requirement under N.J.A.C. 13:21-15.4(d).

applications in this case indicated a type B location, meaning the proposed location had a certified fire suppression system. Based on the assertion their application qualified as a type B location, Applicants requested an exemption from the firewall requirement.

O'Connor confirmed Rossi Auto was a licensed dealer at the location prior to March 6, 2006. O'Connor explained that once the MVC verifies the existence of a licensed dealer at a location, the MVC requests every applicant prove the existence of another business at the location prior to March 6, 2006, to be exempt from the firewall requirement.

O'Connor investigated Rossi's claim that SOW was a licensed dealer at 30 State Route 31 prior to March 6, 2006. As a result of her investigation, O'Connor concluded SOW was not licensed as a used or new car dealer at that location. After searching DORES's records, O'Connor learned Rossi Auto had filed a fictitious business name designation for SOW in 1991 but had not submitted an application for a license.

Rossi testified for Applicants before the ALJ. To the best of his recollection, Rossi explained SOW's registered place of business was 30 State Route 31. Rossi told the ALJ that SOW had its own road sign, stationery, bank account, office staff, and license from the MVC. However, Rossi could not

A-0479-24

confirm receipt of a separate dealership license for SOW. Nor could Rossi answer the ALJ's question about whether SOW had a separate federal identification number from Rossi Auto.

After hearing the testimony, the ALJ concluded Rossi Auto and SOW were separate businesses operating at 30 State Route 31 prior to March 6, 2006, and, therefore, qualified for an exemption from the firewall requirement. The ALJ reasoned N.J.S.A. 14A:2-2.1(2)(c) allows for "a business entity such as Rossi Auto to create and conduct other businesses without having to create a new legal entity." He concluded Rossi Auto had created SOW as an alternate business to expand its sales operation. The ALJ further determined SOW had conducted business activities at 30 State Route 31 even though its showroom was located across the highway. The ALJ also relied on the fact that N.J.A.C. 13:21-15.4(d)(1)(i) "does not define the term 'other business' and does not require that the 'other business' be owned and[/]or operated by a separate legal entity." Because the ALJ found Applicants had met the firewall requirement exemption, he determined the MVC should issue the requested dealer licenses to Power Motors and North Warren.

The MVC filed exceptions to the ALJ's determination with the Chief Administrator of the MVC (Administrator). The Administrator rejected the ALJ's decision and denied used motor vehicle dealer licenses to Applicants.

The Administrator concluded SOW was not a second business at 30 State Route 31 for the purpose of qualifying for an exemption from the firewall requirement. The Administrator found the ALJ mistakenly had relied on N.J.S.A. 14A:2-2.1 because the statute did "not provide for the creation of a separate legal entity" and merely allowed use of a corporate alternative name. The Administrator concluded SOW lacked a separate legal existence from Rossi Auto. The Administrator noted Rossi failed to produce any documents proving SOW "operated as anything other than under the guise of Rossi Auto's alternate business name."

According to the Administrator, under the plain language of the regulation, the term "other business" could not mean "the same business." Because there was no evidence establishing a second business had operated at the 30 State Route 31 prior to March 6, 2006, the Administrator determined Applicants failed to qualify for an exemption from the firewall requirement.

On appeal, Applicants argue they properly established separate places of business at 30 State Route 31 prior to March 6, 2006, exempting them from the

MVC's firewall requirement. Additionally, they assert the MVC's firewall requirement is arbitrary, capricious, and ultra vires.[2]

I.

We first address Applicants' arguments that the MVC erred in concluding they were not exempt from the firewall requirement under N.J.A.C. 13:21-15.4(d). Applicants argue they are entitled to the exemption because Rossi Auto was a licensed dealer at 30 State Route 31 since 1975 and SOW was "another business" at the same location before March 6, 2006. We disagree.

Our review of an administrative agency final determination is limited. Allstars Auto Grp. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). "Judicial review of agency regulations begins with a presumption that the regulations are both 'valid and reasonable.'" N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 548 (2012) (quoting N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 385 (2008)). "That deference 'stems from the recognition that agencies have the specialized expertise necessary to enact regulations dealing with technical matters.'" N.J. Healthcare Coal. v. N.J. Dep't of Banking & Ins., 440 N.J. Super. 129, 135 (App.

---

[2] The ALJ did not determine whether the firewall requirement was arbitrary, capricious, or unreasonable.

Div. 2015) (quoting N.J. State League of Municipalities v. Dep't of Cmty. Affs, 158 N.J. 211, 222 (1999)). Based on an agency's expertise, we "give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004) (citing In re Distrib. of Liquid Assets, 168 N.J. 1, 10-11 (2001)).

An agency's determination will be upheld unless we "conclude that the decision of the administrative agency is arbitrary, capricious, or unreasonable, or is not supported by substantial credible evidence in the record as a whole." In re Adoption of Amends. to Ne., Upper Raritan, Sussex Cnty., 435 N.J. Super. 571, 582 (App. Div. 2014) (alterations omitted) (quoting J.D. v. N.J. Div. of Developmental Disabilities, 329 N.J. Super. 516, 521 (App. Div. 2000)). We "accord a 'strong presumption of reasonableness' to an agency's 'exercise of statutorily delegated responsibilities.'" Ibid. (quoting City of Newark v. Nat. Res. Council, 82 N.J. 530, 539 (1980)). "The burden of demonstrating that the agency's action was arbitrary, capricious[,] or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

A-0479-24

"An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). Our review of an agency's decision is limited to the following inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

This appeal involves N.J.A.C. 13:21-15.4 requiring licensees to maintain an "established place of business" and meet certain requirements depending on whether the licensee is a new or used motor vehicle dealer. See N.J.A.C. 13:21-15.4(b) and (c).

12

N.J.A.C. 13:21-15.4(d) governs places of business for used motor vehicle dealers. The regulation requires a proposed place of business for a used car dealer "occupy[ing] the same building as another business" to be "separated by exterior walls or a firewall as defined by and conforming to sections 202 and 706 of the . . . International Building Code." N.J.A.C. 13:21-15.4(d)(1). A licensed architect, licensed engineer, or municipal code official must certify a dealer's compliance with the firewall requirement, "subject to inspection and approval by the Chief Administrator [of the MVC], or designee." Ibid.

The MVC created an exemption to the firewall requirement. The exemption provides:

> For a proposed place of business located in a building housing more than one business, within which there was at least one licensed dealer and one other business prior to March 6, 2006, and where there is a fire suppression system approved by a local building code official or the New Jersey Department of Community Affairs [(DCA)], walls must be either exterior walls or standard walls constructed separately from any other wall. A proposed place of business meeting this criteria must also be certified to meet the requirements stated in this section by a New Jersey-licensed engineer, New Jersey-licensed architect, or municipal code official.
>
> [N.J.A.C. 13:21-15.4(d)(1)(i).]

Because Rossi Auto operated as a licensed car dealer and SOW was "one other business" at 30 State Route 31 prior to March 6, 2006, Applicants argue

13

they satisfied the requirements for an exemption from the firewall requirement. The MVC agreed Rossi Auto was a registered business and a licensed motor vehicle dealer at 30 State Route 31 prior to March 6, 2006. However, the MVC concluded SOW did not meet the definition of "one other business" under N.J.A.C. 13:21-15.4(d)(1)(i) to qualify for the exemption.

Based on its investigation, the MVC determined Rossi registered SOW in April 1991 as a fictitious name under Rossi Auto. The use of a fictitious name requires a certificate of registration with the Secretary of State. See N.J.S.A. 14A:2-2.1(2). The registration of a fictitious name requires "[a] brief statement of the character or nature of the particular business or businesses to be conducted using the alternate name." N.J.S.A. 14A:2-2.1(2)(c).

In its application to register a fictious name, Rossi Auto stated SOW would be used for "automobile sales." Rossi testified he believed SOW acquired a separate motor vehicle license from the MVC. However, Rossi failed to provide any documents or evidence establishing SOW had its own license separate from Rossi Auto.

As relevant to this appeal, the term "business" is not defined in the MVC's regulations. When interpreting regulations, reviewing courts "give effect to their plain language." In re M.M., 463 N.J. Super. 128, 138 (App. Div. 2020); see also

14

J.H. v. R&M Tagliareni, LLC, 239 N.J. 198, 214 (2019) ("A 'regulation should be construed in accordance with the plain meaning of its language.'" (quoting Medford Convalescent & Nursing Ctr. v. Div. of Med. Assistance & Health Servs., 218 N.J. Super. 1, 5 (App. Div. 1985))). A regulation should be read "in a manner that makes sense when read in the context of the entire regulation." In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013) (quoting Medford Convalescent & Nursing Ctr., 218 N.J. Super. at 5).

Under the plain language of N.J.A.C. 13:21-15.4(d)(1)(i), to be exempt from the firewall requirement there must be "one other business" at the same location prior to March 6, 2006. Applicants argue SOW qualified as "one other business" at 30 State Route 31 prior to March 6, 2006. We disagree.

The plain language of the phrase "one other business" requires a true second business at the same location to qualify for the firewall exemption. Applicants failed to present any proof that SOW operated as a business enterprise separate from Rossi Auto. According to the record, Rossi Auto established SOW as a "doing business as" designation to sell Suzuki cars because Rossi Auto was not permitted to do so under its agreement with General Motors. Further, SOW relied on Rossi Auto's motor vehicle license to sell Suzuki cars and SOW failed to produce any evidence it held its own motor vehicle license.

15

In rejecting the ALJ's decision, the Administrator cited <u>Zucker v. Silverstein</u>, 134 N.J. Super. 39, 48 (App. Div. 1975), which states "[i]t is axiomatic that an individual using a trade name does so for his personal convenience and motive, but that he personally remains liable for all debts incurred. In other words, one using a trade name does not create a separate entity."

Based on its independent investigation, the MVC determined SOW was not registered as a separate business but rather a "doing business as" designation for the sale of foreign cars. The Administrator rejected the ALJ's finding that SOW had operated as "one other business" because the record was devoid of any evidence SOW was "one other business" separate and apart from Rossi Auto. Further, the Administrator concluded that if SOW was truly "one other business," SOW's operation would have been illegal because SOW lacked its own motor vehicle dealer license.

We are satisfied the record contained substantial credible evidence supporting the MVC's determination that SOW was not a separate business from Rossi Auto for the purposes of qualifying for the firewall exemption. Therefore, the Administrator's denial of licenses to Applicants was not arbitrary, capricious, or unreasonable.

A-0479-24

## II.

We next address Applicants' arguments that the MVC's firewall requirement is arbitrary, capricious, and ultra vires. We reject their arguments.

A review of an agency's regulations "begins with a presumption that the regulations are both 'valid and reasonable.'" Schundler, 211 N.J. at 548 (quoting N.J. Soc'y for the Prevention of Cruelty to Animals, 196 N.J. at 385). The scope of review is "generally limited to a determination whether that rule is arbitrary, capricious, unreasonable, or beyond the agency's delegated powers." In re Amend. of N.J.A.C. 8:31B-3:31 & N.J.A.C. 8:31B-3.51, 119 N.J. 531, 543-44 (1990).

We afford deference to an agency's rule-making authority because "certain subjects are within the [agency's] peculiar competence." In re N.J.A.C. 17:2-6.5, 468 N.J. Super. 229, 233 (App. Div. 2021) (alteration in original) (quoting In re Amend. of N.J.A.C. 8:31B-3.31 & N.J.A.C. 8:31B-3.51, 119 N.J. at 543). That deference "is a function of our courts' recognition that 'an agency's specialized expertise renders it particularly well-equipped to understand the issues and enact the appropriate regulations pertaining to the technical matters within its area.'" In re Adoption of N.J.A.C. 11:3-29 by State Dep't of Banking

A-0479-24

& Ins., 410 N.J. Super. 6, 24 (App. Div. 2009) (quoting In re Protest of Coastal Permit Program Rules, 354 N.J. Super. 293, 330 (App. Div. 2002)).

"An administrative regulation is accorded a presumption of validity against a party's challenge that the regulation is arbitrary, capricious, or unreasonable." In re Regul. of Operator Serv. Providers, 343 N.J. Super. 282, 327 (App. Div. 2001) (citing N.J. State League of Municipalities, 158 N.J. at 222). "If procedurally regular, [a regulation] may be set aside only if it is proved to be arbitrary or capricious or if it plainly transgresses the statute it purports to effectuate . . . or if it alters the terms of the statute or frustrates the policy embodied in it." Ibid. (quoting In re Repeal of N.J.A.C. 6:28, 204 N.J. Super. 158, 160-61 (App. Div. 1985)).

We first address whether the firewall requirement is arbitrary or capricious. The purpose of the firewall requirement is to protect the public against fraud and illegitimate activities associated with the sale of motor vehicles by ensuring document security and other consumer protection measures. See 37 N.J.R. 1002(a) (Apr. 4, 2005). In enacting N.J.A.C. 13:21-15.4(d)(1)(i), the MVC stated:

> [I]nvestigatory activity has uncovered that much of the illicit activity by dealers engaged in illegitimate business is connected to premises that lack the requisite office facilities, including firewalls that protect

A-0479-24

documents and individuals. Fire-rated walls provide insufficient protection for documents or individuals located in the inner offices of the facility. Investigation by State authorities has revealed facilities where no dealers were present and no vehicles were for sale.

[49 N.J.R. 1443(b), 1445 (June 5, 2017).]

The MVC expressly recognized the State's compelling interest in ensuring locations for the sale of motor vehicles are legitimate businesses "for the protection of consumers and documents." Id. at 1444.

In 2005, the MVC restructured N.J.A.C. 13:21-15.4(d) to clarify when motor vehicle businesses are deemed separate. 37 N.J.R. at 1002. In restructuring the regulation, the MVC addressed public comments related to the firewall requirement. In response to a comment suggesting the installation of a fixed safe would obviate the need for firewalls, the MVC explained a fixed safe alone "would suffice only if the premises in question were an accommodation address in which the licensee never conducted business" and "a firewall constructed in accordance with National Building Code requirements" would be "necessary to protect documents and individuals, both dealers and customers, who are on the premises at the time." 38 N.J.R. 1324(a), 1332 (Mar. 6, 2006).

Applicants argue that there is no rational connection between construction of a building and whether a business owner engages in deceptive practices,

citing DiStefano's testimony regarding the Phillipsburg MDL. Although DiStefano described the Phillipsburg MDL as "crazy to look at," he testified the Phillipsburg MDL looked that way because the building was dilapidated and had "wee[d]s and stuff that grows and broken windows." DiStefano never testified the Phillipsburg MDL was "crazy" or that the firewall requirement was untethered to advancing the regulation's purpose.

We are satisfied there is a rational relationship between the firewall requirement and the MVC's legitimate objective to protect consumers, dealers, and documents related to the sale of motor vehicles. The MVC sought to protect motor vehicle sale documents from fire damage and thus protect consumers purchasing used cars by safeguarding those sale documents.

The MVC further explained individual dealers within MDLs were historically absent from their locations, transacted business off-site, and used MDL locations as accommodation addresses as "established places of business." 49 N.J.R. at 1444-45. By promulgating the firewall requirement, the MVC sought to safeguard documents associated with the on-premises sale of used motor vehicles which, by extension, protected consumers. On this record, we are satisfied the MVC's firewall requirement and exemption from that requirement are not arbitrary or capricious. The MVC applied its specialized

A-0479-24

expertise regarding places of business for use of motor vehicle sales in enacting N.J.A.C. 13:21-15.4.

Applicants next argue that the regulation is ultra vires because the MVC exceeded its statutory authority by imposing building standards inconsistent with the Uniform Construction Code (UCC). We disagree.

An agency's action is not precluded where it "can be said to promote or advance the policies and findings that served as the driving force for the enactment of the legislation." A.A. Mastrangelo, Inc. v. Comm'r of Dep't of Env't. Prot., 90 N.J. 666, 684 (1982). The MVC enforces the Motor Vehicle Certificate of Ownership Law, N.J.S.A. 39:10-1 to -42, which regulates the motor-vehicle industry, including requirements for suitable places of business. N.J.S.A. 39:10-3, -19. In determining suitable places of business, N.J.A.C. 13:21-15.4(d)(1) requires a "firewall as defined by and conforming to sections 202 and 706 of the 2021 International Building Code, known as the 'IBC/2021,' as adopted by the [DCA], as the building subcode of the [UCC] pursuant to N.J.A.C. 5:23-3.14."

The UCC is promulgated by the DCA Commissioner pursuant to the State Uniform Construction Code Act, N.J.S.A. 52:27D-119 to -141. See N.J.A.C. 5:23-1.2. The DCA Commissioner modeled the UCC on the International

Building Code (IBC). See N.J.A.C. 5:23-3.14(a)(1). The UCC ensures the public's safety, health and welfare regarding building construction, building use, and building occupancy. See N.J.A.C. 5:23-2.1(d).

The building located at 30 State Route 31 is classified as a group B structure for occupancy purposes. See Int'l Bldg. Code § 302.1. All group B buildings are required to have a fire wall with a three-hour fire-resistance rating. Id. §706.4. The fire wall must provide "complete separation" for occupancies "required to be separated by a fire barrier wall." Id. § 706.1. The fire wall's material may be "any approved noncombustible materials." Id. § 706.3. The fire wall "shall extend from the foundation to a termination point not less than 30 inches (762 mm) above both adjacent roofs." Id. § 706.6.

The MVC's regulation requiring a firewall is not expressly reflected in either the UCC or the IBC. However, both the UCC and the ICB allow fire walls.

We are satisfied the MVC's firewall requirement is rationally related to the safeguarding of records associated with the sale of motor vehicles and minimizing fraud associated with the sale of used cars. Nothing in the MVC's firewall requirement contradicts the UCC or the IBC. The MVC's firewall

22

requirement creates a uniform standard designed to safeguard the public against improper uses of MDLs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

23